UNITED STATES, Appellee

v.

JOHN P. NIOLU, Private First Class, U. S. Army, Appellant
2 USCMA 513, 10 CMR 11

No. 1040

Decided May 14, 1953

 
██ 

LT COL James C. Hamilton, U. S. Army, for Appellant.

LT COL Thayer Chapman, U. S. Army, and 1ST LT Eugene L. Grimm, U. S. Army, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused was convicted on September 1, 1951, by general court-martial in Korea of endangering the safety of United Nations Troops in the presence of the enemy by intentionally cutting incorrect artillery charges and setting low elevation on an artillery piece about to be fired. He was sentenced to dishonorable discharge, total forfeiture of pay, and confinement for thirty years. On September 2, 1951, the president of the court, apparently after conferring with the other court members, accused's battery commander, and the pretrial investigating officer, addressed a memorandum to the chief of staff of the convening authority stating inter alia, that "Although Pfc Niolu has been examined by one psychiatrist, and found sane, it is the opinion of the court, Capt. Rob't S. Reid, his B. C. [battery commander] and Capt. James A. Murphy, Investigating Officer that Pfc Niolu is not mentally sound." It is noteworthy that, at the trial, no issue of sanity was raised or argued and no evidence bearing on mental incapacity was introduced. The finding of sanity mentioned in the memorandum above was made during the pretrial investigation.

The convening authority, after receipt of the memorandum, took the following action:

".... it appears that the court,

after announcement of its findings and sentence, desired to inquire into the sanity of the accused. Such action is repugnant to the announced findings and thereby materially prejudicial to the substantial rights of the accused. For this reason, the findings and sentence are disapproved and a rehearing is directed before a general court-martial to be hereafter designated."

Thereafter, the accused was again tried by general court-martial for the same offenses. A plea of double jeopardy, based on the argument that the memorandum, supra, amounted to an acquittal at the first trial, was made and rejected. Evidence was presented on the issue of insanity. The accused was found guilty and was sentenced to dishonorable discharge, total forfeiture of pay, and confinement for twenty-five years. The convening authority approved and the Army board of review affirmed but reduced the confinement to ten years. We granted accused's petition for review, limited to the issues of double jeopardy, the legality of a conference between the law officer and the court outside the presence of accused and his counsel, and the legal correctness of the law officer's instructions.

We turn first to the double jeopardy issue since, if the defense contentions

**515**

as to this question are to be sustained, the second trial must be held a nullity. Defense argues that the memorandum sent to the convening authority by the president of the court indicated that all the members of the court entertained at least a reasonable doubt as to the sanity of the accused and that this required a finding of not guilty. Reliance is placed on paragraph 122a of the Manual for Courts-Martial, United States, 1951, which states that:

"If . . . a reasonable doubt as to the mental responsibility of the accused at the time of the offense (120b) remains, the court must find the accused not guilty of that offense . . . ."

and paragraph 124, which states that:

"After consideration of the record as a whole, if it appears to the convening authority or higher authority that a reasonable doubt exists as to the sanity of the accused, he should disapprove any findings of guilty of the charges and specifications affected by such doubt. . . ."

Arguing that the opinion of the court members amounted in law to an acquittal, defense concludes that the accused could not again be tried for the same offense or, in the alternative, that the convening authority had no power to order a rehearing but should have disapproved the findings and sentence resulting from the first trial.

If any evidence indicating insanity had been introduced at the first trial, or if there was any indication in the record or in subsequent writings by the court members that this court had, at the time of the first trial findings, a reasonable doubt as to the sanity of the accused, then there would be considerable merit in the defense contentions. See United States v. Chance, 67 BR 125; United States v. Carlis, 1 CMR (AF) 203. However, it appears from the record that the court members entertained at the time of their findings, no doubt as to the accused's sanity. The information on this subject upon which they relied apparently came to them after the trial. The convening authori-

ty was not, therefore, confronted with a situation where a court found an accused guilty despite doubts as to sanity (Cf. United States v. Chance, supra) but a situation where legal and valid findings of guilt had been entered and, subsequently, information indicating doubt as to sanity was brought to his attention. That the information was adduced by the court which tried the accused is not material—it is no different from the situation where other responsible persons, not connected with the actual trial, present information raising the issue of sanity after trial. Under such circumstances, the convening authority acted quite properly and in the best interests of the accused in setting aside the findings and sentence and ordering a rehearing at which the issue of sanity could be legally and properly adjudicated. See Manual for Courts-Martial, United States, 1951, paragraph 124, supra. It is difficult to see how this procedure could in any way operate to the detriment of the accused. The convening authority resolved the doubt presented by the psychiatrist's finding that the accused was sane and the court members' opinion that the accused was insane by giving the accused an opportunity to establish his mental incapacity in another trial. We note again, however, that our conclusion on this issue is predicated upon a finding that the memorandum of the president of the first court-martial was not based upon information obtained at the trial and did not purport to be an impeachment of the court's findings at that trial. Had the memorandum been prepared at the conclusion of the trial so that it could reasonably be said that the court entered findings of guilty while entertaining a reasonable doubt as to the accused's sanity, then we would be confronted with a much more difficult problem.

We turn next to a consideration of the instructions given by the law officer. It is apparent from the foregoing discussion that one of the principal issues at the second trial related to the sanity of the accused. Indeed, when the prosecution raised a question as to the necessity of introducing evidence concerning the accused's sanity, the law officer

ruled "that the element of sanity or insanity of the accused has been raised and the trial counsel, as a matter of law, will introduce evidence as to the sanity of the accused." The evidence produced as to sanity was conflicting. After both sides had rested, but prior to argument, the law officer instructed the court as follows:

". . . There has been certain evidence as to the sanity or insanity of the accused, and in Manual for Courts-Martial, page 203, there is a purview. In effect it says:

" 'If the court finds the accused not mentally resosible [sic] for his acts it will forthwith enter findings of not guilty as to the proper charges and specifications. If it finds the accused mentally responsible for his acts, but at the time of trial lacking requisite mental capacity, it will record such findings.'

"In which event, the convening authority might appoint a board of officers to go into the sanity or insanity of the accused. Those witnesses would be made to testify at that time. . . ." [R. 45–46]

After argument, in which the evidence bearing on insanity was discussed at some length by both prosecution and defense, the law officer instructed the court on the elements of the offense charged. Nowhere in his instructions did he discuss the law relative to sanity. The sole reference to that issue is contained in the earlier remarks of the law officer, quoted supra.

Our previous decisions impel a finding that, where insanity is fairly raised as an issue in a case, the ▮▮▮ law officer is required to instruct the court on the law relative to this affirmative defense. United States v. Ginn (No. 263), 4 CMR 45, decided July 10, 1952. We cannot say that the law officer here fulfilled his responsibility. He gave to the court no legal standard against which to measure the proof of insanity. This omission was not cured by the law officer's reference to the Manual discussion of the subject. United States v. Gilbertson (No. 318), 4 CMR 57, decided July 22, 1952.

Since the inadequacy of the law officer's instructions requires a rehearing, it is unnecessary to discuss the issue relating to the conference held between the law officer and the court outside the presence of the accused and his counsel. The decision of the board of review is reversed and a rehearing is ordered.

Judge BROSMAN concurs.

LATIMER, Judge (concurring):

I concur.

I desire to develop certain procedural deficiencies not stressed in the court's opinion in the hope that I can point up the necessity of law officers exercising careful discrimination in selecting the appropriate method of disposing of insanity when it is raised during the trial of a case. The law officer's difficulty in this particular instance was compounded when he confused procedural and instructional requirements.

The record reveals that the second hearing was held because of doubt concerning the sanity of the accused. During the latter trial, a discussion arose as to the procedure to be followed in determining that issue. According to the Manual, there are different times and different ways in which the controversy might be handled, but regardless of the method pursued the procedure should not be so muddled that an accused is denied the right to have the issue considered finally on his guilt or innocence. Insanity may be considered and determined before trial but the first step thereafter to be encountered is whether there should be any inquiry. A request, suggestion or motion that inquiry be had may be made by any member of the court, prosecution or defense. The law officer of a general court-martial should first rule on that question and his ruling is subject to an objection by any member of the court. If an objection is lodged, the court should then determine the desirability of proceeding further. If no objection is made, the ruling becomes final. Assuming an inquiry is ordered, the issue is given precedence, further evidence is obtained, and the issue

further developed. If there is evidence which causes a reasonable doubt as to accused's sanity, a motion for a finding of not guilty based on that ground may be made and ruled on by the law officer. Again that ruling is subject to any objection by a court member as the court has the final say on any question concerning the accused's sanity (Article 51(b), 50 U.S.C. § 626). Regardless of how the matter may be raised, except on final submission for a finding of guilt or innocence, it must be kept in mind that a tie vote decides the issue against an accused and that not to resubmit the question when the court deliberates on the merits denies the accused the privilege of not being convicted except by a two-thirds' majority. Therefore, even though the court rules on the issue during the intermediate phases of trial, it should nevertheless be told specifically that it may consider the issue along with others in its final deliberations on the guilt or innocence of the accused. Moreover, when it considers insanity at that point in the case, adequate instructions must be given. by the law officer so the issue can be determined by an appropriate measuring rod.

Apparently the law officer concluded that disposition of a question raised by him eliminated any further instructions on final submission. The issue developed thusly. Near the end of the proceedings, trial counsel requested information as to whether the court desired to have any witnesses called or recalled. The law officer answered this inquiry in the following language:

"... There has been certain evidence as to the sanity or insanity of the accused, and in Manual for Courts-Martial, page 203, there is a purview. In effect it says:

" 'If the court finds the accused not mentally resosible [sic] for his acts it will forthwith enter findings of not guilty as to the proper charges and specifications. If it finds the accused mentally responsible for his acts, but at the time of trial lacking requisite mental capacity, it will record such findings.'

"In which event, the convening au-thority might appoint a board of officers to go into the sanity or insanity of the accused. Those witnesses would be made to testify at that time. Is it the desire of the court to have any further evidence on that point?

"PRESIDENT: The court does not desire any witnesses recalled.

"LAW OFFICER: On the point of sanity or insanity?

"PRESIDENT: It does not."

This explanation merely outlined the procedure to be followed and was given to assist the court in determining whether it desired to hear additional evidence. It had no relationship to the instructions which must be given by the law officer at the conclusion of the case nor did it include any of the necessary information to guide the court-martial on its deliberation on the merits of the cause. It is one thing to inform the court-martial members what to do if they find the accused sane, but quite another to inform them how to measure legal insanity. Even though the court might have decided not to hear additional witnesses there was sufficient evidence to raise insanity as an issue. Therefore, the court should have been told to consider that evidence, together with other evidence, when deliberating on accused's guilt or innocence and should have been given the instructional guideposts necessary to help it arrive at a proper solution. In considering its findings on guilt or innocence, a standard different than the one used to find on an interlocutory question should be applied. The burden of proof may not be so important on an interlocutory question but if the court, when deliberating on the ultimate finding of guilt, entertained any reasonable doubt that the accused was mentally responsible, it should find him not guilty. It is of considerable importance to the accused that the court be instructed carefully on the standards to be used in determining his guilt as it may be affected by the questions of insanity and who must shoulder the burden of proof. The law officer failed in both regards because he never clearly understood the correct method to be followed in disposing of the issue.