UNITED STATES, Appellee

v.

HANS C. LOOFF, Private, U. S. Marine Corps, Appellant

4 USCMA 36, 15 CMR 36

No. 3782

Decided March 19, 1954

LCDR John J. Nelson, USNR, and CDR Edwin G. Moorhead, USNR, for Appellant.

CAPT Wesley C. Blake, USMC, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused was tried by Marine Corps general court-martial on a specification alleging desertion from October 4, 1946, to July 14, 1952, in violation of Article 8, paragraph 21, Articles for the Government of the Navy, 34 USC 1200. The court returned a finding of guilty, but fixed the termination date of the offense as June 27, 1948, the date of the expiration of the accused's term of enlistment, and sentenced the accused to a dishonorable discharge, total forfeitures, and confinement at hard labor for eighteen months. The findings of guilty and the sentence were affirmed by intermediate appellate authorities. We granted the accused's petition for review on the limited issue of whether an instruction on insanity was required.

Before entering his plea, the accused moved to dismiss the charges because of a lack of mental responsibility at the time of the alleged offense. Considerable evidence touching upon that question was admitted. All of it was presented in open court so that it could later be considered by the court "as part of the case in chief." No evidence was offered by the prosecution. The motion was denied by the law officer, and no objection to the ruling was made by any court member. The accused then entered a plea of not guilty.

In the course of the defense, there was received in evidence a stipulation between the trial and defense counsel providing that all of the evidence relating to the accused's mental condition, which had been presented on the motion to dismiss the charge, was to be considered by the court on the principal issue. In their respective closing arguments both trial and defense counsel argued the issue of sanity. However, the law officer did not make any reference to it in his instructions to the court.

The evidence relating to the accused's sanity was primarily presented by way of contrasting behavior. The accused's conduct as a young man was shown to be generally indistinguishable from that of others. He was described by his mother as an "enthusiastic Scout." At the age of 17, he enlisted in the Marine Corps. In the Corps, he was apparently able to make some very sincere and lasting friendships. One of his fellow marines, Scott McLeary, said that he "never knew another person so well, aside from the companionship" of his own wife; another, C. E. Eberling, characterized his association with the accused as that of "very close friends." Both of these persons subsequently became police officers, one with the Los Angeles Police Department and the other in Dearborn, Michigan. According to McLeary, the accused was possessed of a "genial nature" but there were periods when he "was easily depressed or elated"; his friends were of a "very high intellectual and moral standard."

On May 4, 1945, the accused, then in action against the enemy on Okinawa, received chemical burns on the left elbow, for which he was later awarded the Purple Heart medal. A week later, he suffered blast concussion wounds. Both McLeary and Eberling observed a distinct change in the accused after the second injury. Both found him to be very melancholy, and Eberling noticed that the accused developed a "hatred" toward others and a feeling of persecution and "not knowing what to do and where to turn."

Apparently, the accused's change of personality persisted after his discharge from the Corps on April 11, 1946. His "oldest and closest friend," D. R. McElrath, said of him, that "His sense of humor was not morbid, but fringed closely thereon and his mind seemed to wander. It was as though I were leading a child that hadn't got his way." The accused's mother described his conduct at home as completely irresponsible and related a number of incidents

37

tending to show this characteristic. She also testified that frequently he would leave the house on an errand and fail to return for days; on his return, he "had no excuse or any idea where he was." She consulted the Bureau of Family Relations but nothing much was accomplished. In her opinion, the accused did not know right from wrong. On June 28, 1946, the accused re-enlisted in the Marine Corps. Three months later, he left his organization without authority. At the time, he was not undergoing punishment for any offense and "apparently had no fear of arrest" for any offense.

Two psychiatric reports completed the defense case. One was submitted by a civilian psychiatrist, and was based upon a personal examination of the accused on July 9, 1952. The other was by a Navy psychiatrist who examined the accused on November 3, 1952. Both doctors agreed that at the time of the trial, the accused was able to distinguish right from wrong and to adhere to the right. Their reported findings as to the accused's mental condition, at the time of the commission of the offense, are as follows:

"CIVILIAN REPORT

History would indicate that for quite some time previous to his desertion from military service, at the time of his desertion, and for a time following his desertion he was suffering from a marked personality disturbance. That he was very unstable emotionally, anxious, reasoned superficially, did not have good insight into his condition, and from a psychiatric point of view not fully responsible for his acts and statements. He was agitated, depressed, and had thoughts of suicide."

"SERVICE REPORT

It is the opinion that LOOFF, Hans C. was unable to exercise good judgment at the time of the commission of the alleged offense. Although he could tell the difference between right and wrong he had an emotional disorder which was intensified at that time by his recent overseas duty and resulted in his being subject to behavior for which he was not entirely responsible. He committed his offense during a period of emotional stress and is therefore adjudged not fully competent at the time of the commission of the alleged offense."

It is axiomatic that if insanity is reasonably raised by the evidence, the law officer has the affirmative duty of properly instructing the court on the applicable rules of law. United States v. Biesak, 3 USCMA 714, 14 CMR 132. In the Biesak case, we found it to be a "legislative purpose that a liberal construction be adopted in determining the existence of an issue of insanity," and we concluded that the opinion testimony of a hospital corpsman was sufficient to raise the issue. Here, we have a like expression of opinion by a lay witness. In addition, there is considerable evidence of a change in the accused's personality and conduct following a substantial traumatic experience. Moreover, the psychiatric evaluation of the accused, while guarded in phraseology, is not, as it was in Biesak, directly opposed to the accused's contention. Considering all of the evidence, we have no doubt that the issue of insanity was reasonably raised. Since the law officer did not instruct upon it, and there is no basis for a claim of waiver, reversal is required. United States v. Niolu, 2 USCMA 513, 10 CMR 11.

The decision of the board of review is reversed and a rehearing is ordered.

Judges LATIMER and BROSMAN concur.