UNITED STATES, Appellee

v.

CLARENCE A. WALKER, Private, U. S. Army, Appellant

1 USCMA 580, 5 CMR 8

No. 523

Decided August 13, 1952

LT. COL. Stewart H. Legendre, USA, and 1ST LT. Bernard Landman, Jr., USA, for Appellant.

LT. COL. Thayer Chapman, USA, and 1ST LT. Bernard A. Feuerstein, USA, for Appellee.

PAUL W. BROSMAN, Judge:

This case is before us on petition for review granted on April 24, 1952. The accused, Walker, was tried by special court-martial at Fort Knox, Kentucky, on August 13, 1951, under a single specification alleging willful disobedience of the lawful order of a noncommissioned officer, in violation of the Uniform Code of Military Justice, Article 91, 50 USC § 685. Petitioner was found guilty as charged, and was sentenced to receive a bad-conduct discharge, to forfeit $23.00 per month for six months, and to be confined at hard labor for six months. The findings and sentence were approved by the convening authority, who suspended execution of the discharge. A board of review in the office of The Judge Advocate General, United States Army, affirmed. In our grant of review we limited briefs and argument to the following issue:

"Whether there was error in the procedure of proving prior convictions and prejudice resulting therefrom, in the light of United States v. Zimmerman (No. 261), 2 CMR 66; and United States v. Carter (No. 159), 2 CMR 14."

## II

Since a determination of the issue in this case is not dependent on record facts relating to the offense of which the accused was found guilty, a detailed statement thereof is unnecessary. On the question here involved, the record discloses that, after announcement of findings by the president of the court-martial and the usual reading of personal data, trial counsel made this statement:

"I have evidence of four previous convictions of offenses committed during the current enlistment and within three years preceding the commission of an offense of which the accused has been convicted at this trial to submit as follows:"

Then followed an additional lengthy statement by trial counsel which re-cited in detail the date and exact nature of the previous charges, the character of the courts hearing them, the sentences imposed and the dates thereof, the date of approval by the convening authority, and like information. Thereafter the following colloquy took place:

"TC: Has the accused any objection to the evidence of previous convictions, as read?

DC: The accused has not.

DC: For the record, will the trial counsel read the official signature down below?

TC: The record is signed by Marcus C. Miller, WOJG, AUS, Hq & Hq Det."

Attached to the record, and designated "Prosecution Exhibit 1," is a duly authenticated service record extract copy reflecting four prior convictions of the accused. The extract copy terminates with a custodian's certificate bearing the longhand and typed signatures of Marcus C. Miller, together with a statement of his grade, component, and organization. This document, appropriately described, is listed as an exhibit in the usual place on the record cover sheet, and constitutes the only exhibit so listed and bound with the record. However, nowhere in the transcript of the court-martial's proceedings is it reported that "Prosecution Exhibit 1" was offered or received in evidence. It is clear that the court-martial in assessing sentence here considered four previous convictions of petitioner. To clarify the problem, we note that a comparison of trial counsel's statement to the court-martial respecting prior offenses, as reported in the record, with the contents of the service record extract copy, shows that the former constituted a verbatim recitation of the latter as regards previous crimes and related data. Moreover, read into the record is the name and description of the certifying custodian —thus identifying circumstantially the document from which trial counsel read. In these respects, this case ap-

pears to present a new problem to this Court.

## III

The two leading cases in point are: United States v. Carter (No. 159), 1 USCMA 108, 2 CMR 14, decided January 18, 1952, and United States v. Zimmerman (No. 261), 1 USCMA 160, 2 CMR 66, decided February 7, 1952. In the first the trial counsel stated:

"I have evidence of two previous convictions committed during the current enlistment and within three years next preceding the commission of an offense of which the accused has been convicted at this trial, to submit as follows:—"

Then followed a recitation in detail of the date and nature of the prior charges, the character of the courts hearing them, the sentence in both cases, and the actions of the convening authority and immediate superior in command. The trial counsel then inquired if the accused objected to the evidence of previous convictions. His counsel replied in the negative. Neither the original service record, nor a certified copy thereof, nor any other document, was offered in evidence, and no further action was taken to establish the existence of the two convictions. We held that there had been a failure on the part of the Government to prove properly the convictions relied on, reversed the decision of the board of review, and remanded the case for corrective action.

Zimmerman's situation differed somewhat from that of Carter. There, after findings, trial counsel stated that he had evidence of three previous convictions which were thereupon fully reported to the court. Following this he asked the accused if there was any objection to the statement of previous convictions as read. Defense counsel replied "No objection." No supporting document was offered or received in evidence, but unlike the situation in Carter, there was attached to the record of trial an extract from the service record of the accused showing three prior convictions by court-martial. In

Zimmerman too we concluded that the Government had not properly established the presence of the prior convictions considered by the court-martial, and, accordingly, reversed and remanded the case. In comparing Zimmerman's facts with those of its predecessor, we used the following language in the former opinion:

". . . . The difference between Carter and the case now before us is that in the former the record of previous convictions from which the trial counsel read was not appended to the record, whereas here it is. We feel that the distinction is not vital. We stated in Carter that an unsworn statement of the trial counsel was not competent evidence of previous convictions. We have no more than that here. . . .

"The principal difficulty with the Government's position is that there is nothing in the record to show that the document attached to the record is the one from which the trial counsel was reading, or that this document was ever shown to the defense. The document is not labeled as an exhibit, nor was it specifically referred to by trial counsel. . . ."

The case at bar differs from Zimmerman, its closest analogue, in several particulars. In the first place, the appended service record extract copy there bore no notation as an exhibit, whereas that bound with the record here is described on its face as "Prosecution Exhibit 1," and is found designated as an exhibit in the usual cover sheet listing. In the second place, the record of trial in the instant case—unlike that in Zimmerman—contains a verbatim recitation of the contents of the service record extract as regards previous offenses and accompanying matter, further identified circumstantially by the name of the certifying custodian. Here, therefore, we do not have a situation where—to use the language of Zimmerman quoted above—"there is nothing in the record to show that the document attached to the record is the one from which the trial counsel was reading." Moreover, we do not have a situation where—to con-

582

 

tinue the quotation—"The document is not labeled as an exhibit, nor was it specifically referred to by trial counsel." It is manifest in the present case that the trial counsel was in fact reading from the appended service record extract copy, and equally apparent that defense counsel knew this to be the case. If he was not aware of the source of the trial counsel's information, why then did he request the latter to read into the record the identifying name of the certifying custodian— "the official signature down below"? Moreover, the document in the case at bar—for whatever this is worth—is "labeled as an exhibit," and—what is more important—it was "specifically referred to by trial counsel." It was, in truth, identified by him.

Little time need be spent in distinguishing the case now before us from Carter, our first previous convictions problem. There, although considerable detail was furnished the court-martial on this post-findings subject, no document of any sort reflecting source, or even suggesting it, was appended to the record, with or without treatment as an exhibit, full or partial. It is obvious that the reasons assigned by us for the necessary results reached in the Zimmerman and Carter cases are without application to the one with which we are concerned here.

In point of fact it is highly probable that defense counsel in the instant case had earlier and fully inspected the service record extract from which trial counsel read at the hearing—or that he was so engaged when he asked that "the official signature down below" be read into the record. It is genuinely difficult for us to interpret his request under any other theory. In United States v. Castillo (No. 449), 1 USCMA 352, 3 CMR 86, decided May 2, 1952, we have already pointed out the possibility that explicit tender in cases like the one before us might be made and not reflected in the record. There we said:

". . . . it is to be noted that the standard form of court-martial record does not provide for an affirmative showing of tender. Consequently unless some verbal exchange took place in the instant case on the subject, the record would not necessarily contain any reference thereto. See Manual for Courts-Martial, United States, 1951, Appendix 8, Guide— Trial Procedure, pages 499, 520. . . ."

Defense counsel's request for a record reading of the custodian's signature may conceivably constitute the "verbal exchange" mentioned by us in Castillo, and thus establish inferentially the fact of tender. In any event this reasoning tends to furnish a further basis for distinguishing the Carter and Zimmerman cases, in neither of which was there any slightest suggestion that defense counsel had been afforded an opportunity to scrutinize the document from which trial counsel secured his information concerning prior crimes of the accused.

IV

The net of all this is that in our opinion the contents of the appropriately certified extract copy of the accused's service record bound with the record of trial were properly brought to the attention of the members of the court-martial. This is not to suggest that the result was accomplished in an artificial manner, or that other means might not have been better adapted to the purpose. However, it is one thing to say that a method is something less than the best, and quite another to say that it does not meet minimum standards of legal adequacy. In our view the scheme followed here does just this—but it does it fully.

We do not reach this conclusion on the theory that the document bound with the record and denominated "Prosecution Exhibit 1" was in fact admitted in evidence. So far as the transcript of proceedings shows, it was neither formally offered nor received. Instead, we believe its contents reached the court through the considered and thoughtful action of defense counsel in waiving technical and definitive proffer on the part of the Government. Indeed, the best evidence of a document's contents is the document itself—

**583**

and defense counsel here could have required the prosecution to introduce in evidence the accused's service record, or a duly authenticated extract copy thereof. He chose not to do this—and under circumstances which convince us that he knew what he was doing and fully intended what was done.

We recognize no inconsistency between what has been said here and language earlier used by us in the Carter case. There, it is true, we said:

"While, for the purpose of presenting the argument in the preceding paragraph we have assumed that the unsworn statement [of trial counsel there] was secondary evidence, such is not the law. . . ."

However, here we have much more than a statement of unsworn conclusions by the trial counsel. We have instead—read into the record—a verbatim recitation of the relevant contents of an amply identified document exactly recognized for what it in fact was by all concerned. This, we think, is something markedly different—and we think it is enough. We certainly have no wish in this situation to engraft on the administration of courts-martial an empty ritual. On the other hand—as was demonstrated in Carter, in Zimmerman, and in a number of less important per curiam decisions—we earnestly desire assurance that standards consistent with minimum safety are adhered to. We think they have been met here fully.

V

It follows from what has been said that we find no error in the action of the board of review in this case. Accordingly, its decision is affirmed.

Chief Judge QUINN and Judge LATIMER concur.