UNITED STATES, Appellant

v.

JAMES CAMBRIDGE, Stewardsman, U. S. Navy, Appellee

3 USCMA 377, 12 CMR 133

No. 1850

Decided September 18, 1953

CDR Richard J. Selman, USN, CDR Thomas E. Blade, USN, and CDR E. L. McDonald, USN, for Appellant.

CDR Howard A. Patrick, USN, CDR Raymond W. Glasgow, USN, and LTJG Robert Emmet Dunne, USNR, for Appellee.

ROBERT E. QUINN, Chief Judge:

At a rehearing, on July 25, 1952, the accused was tried and found guilty by a Navy general court-martial of willful disobedience of a lawful order in violation of Article 91, Uniform Code of Military Justice, 50 USC § 685 (Charge I), and assault with intent to inflict grievous bodily harm in violation of Article 128, Uniform Code of Military Justice, 50 USC § 722 (Charge II). The court adjudged a sentence which included a bad-conduct discharge and confinement at hard labor for one year. The convening authority approved the sentence, but reduced the period of confinement to eight months so as to give the accused credit for the confinement served under the original sentence. On review, by a board of review, the findings of guilty and the sentence were set aside and the charges were ordered dismissed. The board of review gave two reasons for its action: (1) that the record does not show that the accused personally joined in a stipulation relating to testimony on the former trial which was entered into between trial and defense counsel and which constituted the whole case for the prosecution, and (2) that the stipulation provided the predicate for the admission of former testimony, but did not include the testimony itself; hence, the purported former testimony read into the record by counsel amounted to unsworn statements which could not constitute evidence of guilt.

Pursuant to Article 67(b)(2), 50 USC § 654, The Judge Advocate General of the Navy certified two questions to this Court:

"(a) As a matter of law, is the personal assent of an accused a necessary condition precedent to the acceptance and entry of a stipulation in addition to the consent of his counsel?

"(b) Was there, as a matter of law, sufficient probative information before the court at the rehearing to support the findings of guilty?"

The record of trial shows the following proceedings after the opening statements of counsel:

"TRIAL COUNSEL: In the case of the United States versus Cambridge, the prosecution will call as witnesses the following named persons: R. M. Anderson, SDG3; W. R. Steiner, QMQ1; A. R. Gilbert, Ensign, U. S. Navy.

"Due to the fact, however, that these persons are more than 100 miles from the place where the trial is to be held, it is requested that the testimony given by them in a former trial be read in evidence in the case now in hearing. It has been stipulated and agreed upon between the defense and the prosecution that if these witnesses were to appear before the court today that the testimony they would give would be the same as that given at the former trial.

"DEFENSE COUNSEL: So stipulated.

"LAW OFFICER: Very well. The stipulation will be accepted. The testimony elicited or given at the former trial will be read into the evidence with the consent of the accused.

"TRIAL COUNSEL: 'Richard M. Anderson, steward, third class, U. S. Naval Reserve, was called as a witness for the prosecution, was sworn, and testified as follows:

Q. State your full name, rate and duty station.

A. Richard M. Anderson, SDG3, Portsmouth Naval Hospital.' "

As appears from the above extract, trial counsel read a series of questions and answers which purportedly constituted the testimony of the prosecution witnesses at the former trial. When the former record made reference to a prosecution exhibit, trial counsel interrupted his reading and directly offered the exhibit into evidence at the rehearing. Typical of this procedure is that relating to the admission of prosecution exhibit 1, which we set out below:

" 'Q. I hand you Prosecution Exhibit One and—for identification and which purports to be a clip board with a report slip thereon and ask you to identify it?

"A. That's the one.'—

"TRIAL COUNSEL: The prosecution at this time will offer Prosecution Exhibit 1 for identification in evidence as Prosecution Exhibit 1, subject to any objection by the defense.

"DEFENSE COUNSEL: No objection.

"LAW OFFICER: Very well, Prosecution Exhibit 1 for identification will be received in evidence as Prosecution Exhibit 1.

"TRIAL COUNSEL: (Continuing) 'Q. As I understand it, you have testified that you were making a report on Cambridge. Is that correct? "A. Yes, sir.' "

At the conclusion of the Government's case a short recess was taken. When the court opened, defense counsel opened his case by offering a stipulation regarding the testimony of two defense witnesses in virtually the exact language used earlier by the prosecution in presenting its own stipulation.

"DEFENSE COUNSEL: It is stipulated in the case of the United States versus Cambridge that the defense will call the witnesses who will subsequently be named. Due to the fact, however, that these witnesses are more than 100 miles from the place where the trial is to be held, it is requested that testimony given by them in a former trial be read into evidence in the case now in hearing. It has been stipulated and agreed upon between the defense and the prosecution that if these witnesses were to appear before the court today that the testimony they would give would be the same as that given at the former trial.

"TRIAL COUNSEL: Consent.

"LAW OFFICER: Very well. The stipulation will be accepted. The testimony given by the witnesses at the former trial will be read into evidence by the defense.

"DEFENSE COUNSEL: The first such witness is Oce C. Taylor, junior, stewardsman, U. S. Navy."

The former testimony of the defense witnesses was presented in the same manner as that for the prosecution, except that the direct examination was now read by defense counsel and the cross-examination by trial counsel. The entire case for the defense, like that of the prosecution, consisted only of the questions and answers read by counsel.

Two kinds of stipulations are provided for in the Manual for Courts-Martial, United States, 1951, stipulations of fact and stipulations of testimony. The rules governing the acceptance of both are substantially the same. Manual, *supra,* paragraph 154*b*(2). The rules that are applicable to this case are set out in paragraph 154*b*(1), Manual, *supra* as follows:

"(1) *As to facts.*—The parties may make a written or oral stipulation as to the existence or nonexistence of any fact. A stipulation need not be accepted by the court and should not be accepted if any doubt exists as to the accused's understanding of what is involved. If an accused has pleaded not guilty and the plea still stands, the court should not accept a stipulation which practically amounts to a confession. A stipulation of a fact which if true would operate as a complete defense to an offense charged should not be accepted by the court. In a capital or other important case a stipulation should be closely scrutinized before acceptance. The court is not bound by a stipulation even if received. For instance, other evidence before the court may convince the court that the stipulated fact is not true. The court may permit a stipulation to be withdrawn. If so withdrawn, it is not effective for any purpose."

This discussion is amplified by a Note in the Guide—Trial Procedure, set out in Appendix 8*a* (page 510):

"TC: With the consent of the accused, the prosecution and defense stipulate—.

"NOTE: — Prior to the acceptance of any stipulation the LO (president of a special court-martial) should determine that the accused joins in the stipulation. See 154*b*.

"LO (PRES): (Subject to objection by any member of the court,) the stipulation is (not) accepted."

Superficially, there seems to be a conflict between the text and the Appendix Note on the one side and ■ Article 51(*b*), Uniform Code of Military Justice, 50 USC § 676, on the other. According to the matter in the first parenthesis of the note, the law officer rules upon the acceptance or non-acceptance of a stipulation but his ruling is subject to objection by the court and paragraph 154*b* provides that action on a stipulation is to be taken by the court. However, Article 51(*b*) directs that the law officer rule on all interlocutory questions, other than challenge, and that his rulings, with two exceptions not here applicable, constitute the rulings of the court. The differences may be resolved by treating the text reference to the court as meaning the law officer of a general court-martial when the trial is by such court, and by considering the parenthetic reference of the Appendix Note as applicable only to the president of a special court-martial. This construction would avoid any conflict with Article 51(*b*), Uniform Code of Military Justice, *supra*. Moreover, it would be in harmony with the principle that in a special court-martial the president of the court rules on like interlocutory questions, but only in the name of the court. United States v. Pulliam, 3 USCMA 95, 11 CMR 95, decided July 17, 1953. Clearly, therefore, the rulings on the stipulations were properly made by the law officer, rather than by the court.

Stipulations of fact or testimony intended to avoid delay, trouble, or expense in the trial are well-recognized and accepted ■ substitutes for other competent sources of proof or the direct testimony of witnesses. Ordinarily, statements made by defense counsel will bind the accused as effectively as though the accused himself had made them. This is particularly true if the statement is made by counsel in the progress of the trial and acquiesced in by the accused through his silence. Dick v. United States, 40 F2d 609 (CA 8th Cir) (1930). Consequently, in the absence of any special provisions applicable to trial by courts-martial, we hold,

**382**

without hesitation, that an accused is bound by stipulations entered into by his counsel even though he did not personally and expressly join in them. 50 Am Jur, Stipulations, § 8 *et seq.*; 5 Am Jur, Attorneys, § 91. However, Appendix 8*a*, Manual, *supra*, provides that prior to the acceptance of a stipulation the law officer "should determine that the accused joins" in it. In view of this provision, we are asked in the first certified question whether "as a matter of law . . . the personal assent of an accused is a necessary condition precedent to the acceptance and entry of a stipulation in addition to the consent of his counsel" in a court-martial.

At the outset, we may assume that, whatever its effect, the provision in issue is as controlling as a ■ portion of the text of the Manual, *supra*, notwithstanding that it appears as a Note in an Appendix to the text. Cf. United States v. Buckmiller, 1 USCMA 504, 4 CMR 96, decided July 31, 1952. Considering the provision itself, we do not regard it as a mandatory direction that the accused be made to stand up in open court and give his express, personal assent before a stipulation can be accepted for consideration by the court, and to have that fact shown in the record of trial. Its plain intendment is one of caution. The law officer or president of a special court-martial is asked to assure himself that the accused joined in the stipulation.

The methods of ascertaining the assent of the accused are not described. Surely, if the record shows ■ that prior to the acceptance of a stipulation the law officer, in open court, requested the defense counsel to confer with the accused concerning a stipulation offered by the prosecution, and after such conference it was announced by defense counsel that the stipulation was accepted, not even a person with the most meticulous regard for technical niceties would deny that there was a reasonable basis for concluding that the law officer had determined that the accused joined in the stipulation. Yet, in that instance the personal assent of the accused would not be reflected in the record. On the

other hand, we can readily imagine situations in which it would be appropriate to inquire of the accused personally whether he joined in a stipulation, and have it appear of record that he did. Thus, if a written stipulation entered into between trial and defense counsel before trial, is offered, and the signature of the accused does not appear therein, in the interest of certainty of consent and to avoid any question of inadvertence or mistake, it would be proper to ask the accused if he joined in the stipulation. In other words, the acceptance of a stipulation is not dependent upon the express, personal assent of the accused, but upon the exercise of sound discretion by the law officer in the acceptance of the stipulation. His determination that the accused joined in the stipulation may be predicated upon a number of factors, rather than by the exclusive process of specifically asking the accused. In fact, it need only rest upon the implied authority of defense counsel to act for the accused in all matters of procedure.

Defense counsel may properly stipulate to the whole or any part of the prosecution's case without the personal and express assent of the accused. Joseph v. United States, 145 F2d 74 (CA 9th Cir) (1944), cert den 323 US 776. He may also bind the accused to a formal plea of guilty, even though the accused remains silent. United States v. Denniston, 89 F2d 696 (CA 2d Cir) (1937), cert den 301 US 709. Certainly, if defense counsel can properly bind accused to such an extent, an accused ought to be bound by a stipulation which falls far short of a formal plea of guilty. As was said in United States v. Denniston, *supra* (page 698):

"But there is a technical objection to the plea itself. It is argued that as it was entered by the attorney and not by the appellant personally it is of no effect. While it is true that in ancient times when the rights of an accused were comparatively few much stress was laid upon the formality of arraignment and plea, especially in felony cases, and plenty of authority may be found to the effect that a plea of guilty at common law had

to be made by the accused himself after he had been adequately identified, we are not disposed to subscribe to such rigidity of procedure. The reason for it has disappeared with the acceptance and use of modern methods which preserve the substance of all the rights of an accused person without so much sacrifice of the rights of the public before the altar of mere form. If an indicted person is actually present in open court with his attorney who is competent to represent him and does so under circumstances which fairly show that the attorney speaks for his client who understands what is being done and its import and who acquiesces when the attorney enters a plea of guilty for him, nothing but a slavish adherence to archaism could underlie a holding that the plea was void. . . . Let the accused be actually present in the court of competent jurisdiction; let the circumstances show clearly that he knew and understood what was being done; let it be made clear that he acquiesced in a plea of guilty then entered for him by his attorney and the plea should have exactly the same force and effect as though he had spoken himself in the words of the attorney. So we hold the plea of guilty valid."

In this case not only did the accused have an opportunity to object to the stipulation at the time defense counsel accepted it, but he had a second chance when the law officer directed that the former testimony be read into evidence with "the consent of the accused." However, he did not object or in any way question the stipulation. The record incontrovertibly shows that the law officer had a sufficient and reasonable basis upon which to determine that the accused joined in the stipulation. And, that is all that is required by the Note, Appendix 8a. A different problem would be presented if the accused affirmatively refused to consent to a stipulation, but under the circumstances of this case, we attach no significance to the fact that the specific assent of the accused does not appear in the record. We, therefore, answer the first certified

question in the negative, to the extent that the express, personal assent of the accused need not be given in open court.

Having determined that the stipulation was properly accepted, we turn to a consideration of its content. The board of review held that the questions and answers read by trial and defense counsel amounted solely to unsworn oral statements, and, therefore, were not part of the record. On that premise they found no proof of guilt and ordered the charges dismissed. For that reason we consider the second certified question, "Was there, as a matter of law, sufficient probative information before the court at the rehearing to support the findings of guilty?"

A stipulation should be so construed as to effectuate the apparent intention of the parties and be in ▆▆▆▆ ▆ harmony with the requisites of a fair trial upon the merits rather than in a narrow and technical sense which would defeat the purpose of its execution. Arkansas Valley Sugar B. & Irr. L. Co. v. Ft. Lyon Canal Co., 173 F 601 (CA 8th Cir) (1909). In case of doubt, an appellate court should adopt a construction that accords with that at the trial level. 50 Am Jur, Stipulations, § 8, page 610.

As we construe the stipulation here, we do not believe that it was limited ▆▆▆▆ ▆ to establishing only the preliminary conditions for the admission of former testimony. On the contrary, it was patently intended to include the actual testimony, and it was undoubtedly so considered by the law officer and trial and defense counsel. Thus, immediately after the defense counsel signified his agreement with the stipulation, the law officer said, "The testimony elicited or given at the former trial will be read into evidence with the consent of the accused." Instead of objecting because no competent proof had yet been offered to show that there was, in fact, former testimony, defense counsel, at the appropriate time, read all of the cross-examination himself. Unquestionably, he used nuances of tone that would favor the accused.

Implicit in this course of conduct, is a plain understanding by the law officer and both counsel that the stipulation contemplated that the questions and answers read by counsel constituted the former testimony. This conclusion is quite inescapable when it is considered that defense counsel used an almost identically worded stipulation and exactly the same procedure to present his own case.

It may perhaps have been more artful for counsel and the accused to stipulate to the original, or a copy, ▆▆▆▆ ▆ of the record of the former trial, and to have the same formally received in evidence before the reading was begun. However, the failure to include an actual record of the former trial as a formal exhibit, is hardly fatal. The same result was achieved by the proceedings here. See Gormley v. United States, 167 F2d 454 (CA 4th Cir) (1948); Landis v. New Amsterdam Casualty Co., 347 Ill App 560, 107 NE2d 187 (1952). The parties unquestionably intended, under the stipulation, to put into evidence questions and answers read by both counsel, which purported to be the former testimony of the various witnesses. It is this intention which distinguishes this case from our previous decisions that the unsworn statements of trial counsel do not constitute competent evidence. See United States v. Carter, 1 USCMA 108, 2 CMR 14, decided January 18, 1952; United States v. Zimmerman, 1 USCMA 160, 2 CMR 66, decided February 7, 1952. Thus, in United States v. Carter, supra, we said:

"Under certain circumstances, an appellate court might conclude that the acts and statements of the parties during the trial amount, in law, to a stipulation. While no particular language may be necessary to establish a stipulation, it should appear in the record that the parties clearly understood they were stipulating to facts and the language in this case does not show that such was the understanding. Rather, it establishes that both counsel were fully and fairly trying to follow the procedure set forth in the Manual, and, that the answer given by the defense counsel

was the one suggested to him by the guide. There is no showing that he intended to stipulate the statement as evidence and bind his client as to the truth of the statement made. On the contrary, we are convinced the statement was made preliminary to the introduction of the document and that there still remained the right to make an appropriate objection if, upon inspection of the proposed exhibit, it appeared that it might be inadmissible in evidence. We do not believe the uncertainty arising out of a misunderstanding of the guide can be construed as a stipulation to cover the contents of the document."

It may be, as found by the board of review, that there were certain differences between the testimony of the witnesses as read and the actual record of the former trial. But, assuming that the board of review and this Court in a proper case may look to the record of the former trial, in the absence of a showing that the variances were so substantial as to amount to a mistake of fact, or to a constructive fraud which would justify setting aside the stipulation, we think that the parties were bound by the terms of the stipulation. See Cox v. State, 107 Tex Cr 19, 294 SW 564 (1927). True, the stipulation provided that the testimony was the same, but it also contemplated that it was to be as read. On the reading, defense counsel made no objection. Yet, from the fact that he actively participated, it is apparent that he had readily available or actually before him the record of the former trial. Under the circumstances, we attach no importance to the minor differences noted by the board of review. Accordingly, we answer the second certified question in the affirmative.

For these reasons, we reverse the decision of the board of review. We return the record of trial to The Judge Advocate General of the Navy for such action as would not be inconsistent with this opinion.

Judges LATIMER and BROSMAN concur.