UNITED STATES, Appellant

v.

JOHN P. NIOLU, Private First Class, U. S. Army, Appellee

4 USCMA 18, 15 CMR 18

---

No. 1040

Decided March 19, 1954

LT COL William R. Ward, U. S. Army, and MAJ Irvin M. Kent, U. S. Army, for Appellant.

LT COL James C. Hamilton, U. S. Army, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

The initial conviction of this accused was set aside by the convening authority who directed a rehearing. The record of trial on that rehearing was considered on appeal by this Court, following affirming action by intermediate reviewing authorities. At that time we reversed and remanded because of inadequacies in the law officer's instructions. United States v. Niolu, 2 USCMA 513, 10 CMR 11. A second rehearing—that is, a third trial—was then held, and the instant conviction ensued. This, in turn, was set aside by a board of review in the office of The Judge Advocate General, United States Army. The record now before us is to be reviewed on no issue litigated at earlier hearings, but alone on the following question certified to us by The Judge Advocate General:

"Was the board of review correct in law in finding 'that the entire evidence presented by the Prosecution allegedly from transcripts of former proceedings, which were never properly proved nor shown to be the official records of the former trials or formally admitted in evidence, was accordingly hearsay evidence incompetent to prove the accused's guilt of the offense charged and such evidence was legally insufficient to sustain the conviction'?"

II

The difficulty with which we are presently concerned arose as a consequence of the ambiguity and want of responsiveness of defense counsel's replies to the Government's offer of certain stipulations as to former testimony, together with the failure of trial counsel formally to offer in evidence the record of the former proceeding from which the testimony at the present trial was extracted. See Manual for Courts-Martial, United States, 1951, paragraph 145b.

The first offered stipulation was put in the following manner:

"TC: . . . Prosecution desires to call as its first witness Sergeant Walter E. Mays, who has since the date of the original trial been separated from the service. It is hereby stipulated by and between trial counsel, defense counsel and the accused, Private First Class John P. Niolu, with the consent of the accused, that the present address of Sergeant Mays is Box No. 24, Wurtland, Kentucky, which is more than 100 miles distant from the place of this trial; that is, Fort Leavenworth, Kansas. Thus the testimony given by Sergeant Mays at the former trial shall be read from the official record of the former trial as provided by paragraph 145b, Manual for Courts-Martial, United States, 1951.

"DC: Defense agrees to the stipulation as to the present whereabouts of the witness.

"LO: Private Niolu, do you understand the meaning of that stipulation? _

"ACCUSED: Yes, sir.

"LO: And is it agreeable to you that that stipulation be accepted by the court?

"ACCUSED: Yes, sir.

"LO: The stipulation will be accepted by the court."

We agree with appellate Government counsel that if the only matter appearing in the record—and operating to reflect the intention of the parties—had been the language set out above, there would be little cause to question the validity of the decision of the board of review. However, as was observed by the board itself, identical stipulations were made as to the testimony of all other Government witnesses. At the same time, the board wholly omitted to refer in any manner to the clear showing of affirmative participation by defense counsel in the presentation of evidence from the record of the former hearing. On one occasion, for example, after trial counsel had read extensively to the court-martial from the testimony of a particular witness, defense counsel interjected the question, "You are not having any redirect examination?" Trial counsel responded in the negative. Defense counsel then stated, "I would like to ask one further question, at the bottom of page 14." After reading the questions and answers he desired to be made a part of the record in the instant case, counsel then stated that he had nothing further to offer. Upon three subsequent occasions defense counsel either interrupted to correct a reading error on the part of trial counsel, or himself to read into the record testimony supplemental to that read by the Government.

### III

The framers of the Manual realized—in conformity with the thinking of civilian law—that occasions ▬▬▬ ▮ may arise on which it will be necessary that the same parties relitigate the same issues. Cf. Wigmore, Evidence, 3d ed, § 1367 et seq. Where witnesses at the first hearing are for specified reasons unavailable, it has been felt that both common sense and sound practice require that their former testimony be admissible, as having

earlier withstood the rigors of cross-examination by the same adverse party. We are certainly without disposition to impede what appears to constitute a salutary procedure, and one which preserves the rights of confrontation and cross-examination—certainly where the defect alleged is of such a nature that it would neither frustrate the purpose of the Manual's architects nor operate to the substantial prejudice of the accused.

In United States v. Carter, 1 USCMA 108, 2 CMR 14, we expressed the view that a likelihood of prejudice arose from the presentation to the court-martial of evidence, which was damaging to the accused, and which had not been passed on by his counsel with respect to propriety of admission, validity and completeness. "There is no showing," we said in that case, "that the accused was informed of the nature and completeness of the memorandum prior to or at the time the statement was made, nor is there a showing that he was afforded an opportunity to inspect it under such circumstances as to preclude him from making a legal objection when, and if, tendered. At least the accused is entitled to see the document from which the statement is read and to object to its subsequent admission in evidence if it fails to meet all requirements of official documents." We reoffered this perspective in United States v. Zimmerman, 1 USCMA 160, 2 CMR 66, where we observed that "there is nothing in the record to show that the document attached to the record is the one from which the trial counsel was reading, or that this document was ever shown to the defense."

However, in cases where the record before this Court has reflected that defense counsel was afforded an opportunity to review the material read into the record, and in fact did so, we have found no just ground for a refusal to give effect to the manifest intent of the parties. United States v. Cambridge, 3 USCMA 377, 12 CMR 133; United States v. Walker, 1 USCMA 580, 5 CMR 8. Thus, the evils of the Zimmerman-Carter situation were held not to exist in an instance where the service record source of the extract furnished the

court was appended to the record of trial, which contained a verbatim recitation of the matter read therefrom, where the document extracted was identified circumstantially by the name of the certifying custodian, and—perhaps most persuasively—where defense counsel himself had specifically referred to the custodian's name, thus manifesting an immediate familiarity with the source and an approbation of the matter being read into the record. United States v. Walker, supra.

In the instant case, the fine detail of the corrections and additions offered by defense counsel made it abundantly clear that he was following with care the reading of former testimony for the purpose of protecting his client fully from possible errors of omission and commission. In contemplation of such diligence, we have no fear that improper matter was placed before the court without opportunity for objection by defense counsel.

## IV

Since the record of the former trial was not tendered formally and specifically at the present one, it follows that, if the evidentiary matter under scrutiny was admissible and before the court-martial, this result must have come about through the stipulation of counsel, acquiesced in by the accused. It is familiar learning that the intent of the parties to an agreement will be given effect if possible. And where the intent is but poorly manifested, that construction will be adopted which will avoid an absurd result. United States v. Padilla and Jacobs, 1 USCMA 603, 5 CMR 31.

On each occasion when the prosecution offered through stipulation the prior testimony of a witness — predicated on distant whereabouts—defense counsel indicated that he agreed to the stipulation concerning the location of the witness, and in this response the accused acquiesced. Indeed, the repetition of this procedure makes entirely clear that which in a single instance might have been obscure. It is evident, in fact, that all parties concerned construed the defense response to embrace the entire stipulation offered, and not the premise alone—for on the basis of counsel's reply, the testimony contemplated was in every instance read into the record. We can conceive of no other rational interpretation of the defense response. Any lingering doubts as to the intent of the parties must surely be dispelled when we consider the defense's affirmative participation in the procedure presently attacked. Apart from the minor corrections mentioned earlier, it is to be noted that on two occasions, the lawyer representing the accused—and quite without additional stipulation — read into the record former testimony presumably favorable to his client. Cf. United States v. McNeill, 2 USCMA 383, 9 CMR 13.

In addition, the language of arguments of counsel at the close of the evidence manifests a clear intention that the testimony of the Government's five witnesses—its entire case, in fact—be received in evidence through stipulation. According to the record, trial counsel's argument, for example, began as follows:

"With the court's permission, due to the fact that this is a re-hearing *and most of the testimony has been from the original record of trial,* prosecution will only take a few minutes to review the facts elicited from the record." [Emphasis supplied.]

And defense counsel opened in these words:

"If the court please, on behalf of the accused I should like to make just a few statements and give the court our view of the *testimony* and the facts that have been brought out here today. The court, of course, will not decide the case on what I say or what trial counsel says, *but on what the witnesses themselves have said in their testimony.*" [Emphasis supplied.]

Although the case for the Government was developed other than through the personal appearance of witnesses, the accused took the stand. That he was party to the stipulative intention mentioned earlier is made manifest

**21**

through questions put to him by his counsel on direct examination. Thus, on page 29 of the record he was asked: "Now, then, Private Niolu, *you have heard the testimony in this case this morning.* I will ask you whether or not you ever made any statements relative to getting your sergeant busted?" And the accused answered: "I could have made them." (Emphasis supplied.)

Therefore, we must adopt as our present holding the language of this Court in United States v. Cambridge, supra, to the effect that "A stipulation should be so construed as to effectuate the apparent intention of the parties and be in harmony with the requisites of a fair trial upon the merits rather than in a narrow and technical sense which would defeat the purpose of its execution. Arkansas Valley Sugar B. & Irr. L. Co. v. Ft. Lyon Canal Co., 173 F 601 (CA 8th Cir) (1909). In case of doubt, an appellate court should adopt a construction that accords with that at the trial level." To the extent that defense counsel agreed to the proffered stipulations, the accused is also bound under the circumstances of this case—in the absence of an expression of dissent. None was expressed here. See United States v. Cambridge, supra, and cases there cited.

V

We are convinced that the accused and his counsel were accorded an adequate opportunity to supervise the submission of testimony at the trial; that this testimony was in fact extracted from the record of the former rehearing; and that it was the clear purpose of the parties to stipulate that it be accepted by the court. It is necessarily our conclusion, therefore, that the evidence was properly before the court-martial. To hold otherwise would be to elevate form over substance—and with a vengeance. It follows that the certified question must be answered in the negative. The decision of the board of review is reversed and the record remanded to The Judge Advocate General, United States Army, for action not inconsistent with this opinion.

Chief Judge QUINN and Judge LATIMER concur.