UNITED STATES, Appellee

v

ROGER T. GERLACH, Lance Corporal,
U. S. Marine Corps, Appellant

16 USCMA 383, 37 CMR 3

No. 19,500

November 4, 1966

*Lieutenant Warren K. Morgens,* USNR, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Edward F. O'Keefe,* USNR.

*Lieutenant Jean E. Van Slate,* USN, argued the cause for Appellee, United States.

QUINN, Chief Judge:

Appellant was brought from Vietnam to Okinawa to stand trial before a general court-martial on a charge of committing an assault, in which grievous bodily harm was intentionally inflicted upon a fellow Marine, in violation of Article 128, Uniform Code of Military Justice, 10 USC § 928. He pleaded guilty, and was sentenced to suffer punishment extending to confinement at hard labor for two years and a bad-conduct discharge. With provision for a limited suspension of part of the punishment, the convening authority approved the sentence. His action was affirmed by the board of review. The accused then appealed to this Court, contending that he was prejudiced by trial counsel's argument as to the sentence.

At trial, a stipulation of facts was introduced in evidence, with the consent of the accused and trial counsel. In pertinent part, it reads as follows:

". . . Lance Corporal Roger T. GERLACH, on the evening of 11 November 1965, *was involved in a scuffle* with an unknown Marine, *at which time he was kicked in the groin.* He then went from the scene of the assault to his squad bay area, secured a K-bar knife and returned to the scene of the assault. *Seeing Lance Corporal HELUS, and believing him to be the man who kicked him in the groin,* he cut Lance Corporal HELUS in the abdomen, on the left side, and on the back of the neck." [Emphasis supplied.]

In addition, the accused testified in his own behalf during the sentence proceedings. He reviewed his Marine Corps background, which included duty in the Dominican Republic, and revealed that he had volunteered for service in Vietnam. He also related circumstances about the offense which were not set out in the stipulation of facts. Among other things, he said that he had been drinking, but admitted he was not too drunk to know what he was doing at the time of the assault. He maintained he had never before "pulled a knife on anyone," and

**384**

he could not "understand" why he had done so on this occasion.

Lance Corporal Wallace L. Helus, the victim of the accused's assault, testified for both the prosecution and the accused. For the Government, he identified two photographs of the knife wounds. These were admitted into evidence as "matters in aggravation." He also testified that "to the best of . . . [his] knowledge" he had not kicked the accused. On behalf of the accused, Helus testified that previous to the incident he had done so much drinking his recollection of the incident was "hazy." He could not recall the immediate circumstances of the assault, but admitted that when he had "too many drinks" he sometimes got "rowdy." He did not know how the incident "started" or "whose fault it was," so he could not "bear a grudge" against the accused.

Trial counsel argued passionately for the maximum penalty. Referring to the evidence that the accused had been kicked in the groin by an "unknown Marine" in a "scuffle" moments before the accused went for his knife, he argued as follows:

". . . [F]rom evidence here we have seen today there's been nobody that kicked him. Lance Corporal HELUS is the only one that possibly could have, and the first time he saw GERLACH was when he came downstairs. GERLACH himself said he was kicked in the groin at a prior time, then he went up the stairs, got the K-bar and came back, so it would be impossible for HELUS to kick GERLACH in the groin."

At the end of trial counsel's argument, defense counsel called attention to the recitals in the stipulation of facts, and asked whether the Government was "now refuting" the stipulation by questioning "what really happened there." He was interrupted in the middle of his remarks by the law officer, who summarily directed him to "proceed with . . . [his] argument." Thereafter, the law officer gave no instructions to the court mem-

bers to disregard trial counsel's assertion that the evidence demonstrated that "nobody . . . kicked" the accused.

Evidence may properly be presented by way of stipulation between the Government and the accused. ▪ Manual for Courts-Martial, United States, 1951, paragraph 154*b*; United States v Cambridge, 3 USCMA 377, 12 CMR 133. Two broad categories of stipulation are generally recognized. One is a stipulation as to the testimony that an absent person would give if called as a witness; the other is a stipulation as to the existence or nonexistence of an agreed fact. The difference between the two classes is material. The usual stipulation of expected testimony does not admit the truth of the testimony; consequently, the party adversely affected by the testimony may introduce other evidence inconsistent with, or contradictory of, the stipulated testimony. A stipulation of fact, however, is usually conclusive. See United States v Cambridge, supra. It has been compared to a judicial admission, "so that the one party need offer no evidence to prove it, and the other is not allowed to disprove it." Wigmore, Evidence, 3d ed, § 2588. However, the Manual for Courts-Martial seems to accord the stipulation of fact less effect. It provides that the "court is not bound by a stipulation [of fact] even if received," where "other evidence" before the court convinces it "that the stipulated fact is not true." Manual for Courts-Martial, supra, paragraph 154*b*(1). Except possibly for a fact that may be judicially noticed (see Attorney General v Rice, 64 Mich 385, 391, 31 NW 203 (1887)), it is difficult to see how other evidence contradictory of a stipulated fact may come before the court, without a direction that the stipulation be disregarded. In this case, we need not consider the extent or the conditions, if any, under which the court may properly disregard a stipulation of fact. Unless, and until, the stipulation ▪ less, and until, the stipulation is withdrawn or stricken from the record, the parties are

bound by it. United States v Cambridge, supra. Consequently, trial counsel should not have contended, as he did, that the evidence demonstrated that "nobody . . . kicked" the accused. Furthermore, when defense counsel challenged the propriety of counsel's argument, the law officer should have instructed the court members to disregard trial counsel's remarks.

Improper argument by trial counsel does not necessarily require corrective action by an appellate ▪ court. United States v Carpenter, 11 USCMA 418, 29 CMR 234. Also to be considered is whether there is a fair risk that the argument had any effect upon the court members. United States v Simpson, 10 USCMA 229, 27 CMR 303. The Government contends that the seriousness of the victim's injuries and the leniency of the sentence compared to the permissible maximum punishment of five years' confinement and a dishonorable discharge, which could have been adjudged, compellingly indicate that the court members were not influenced by the prosecutor's argument. These factors are indeed relevant to assessment of the probable impact of the error, but they are not determinative of the issue. From the record of trial it is clear the parties attached importance to the evidence that the accused was kicked in the groin. That circumstance was included in the stipulation of facts, and trial counsel expended considerable effort in attempting to discredit it as an ameliorative factor. It cannot, therefore, be said that trial counsel's argument was so insignificant as to be entirely devoid of persuasiveness. United States v Anderson, 8 USCMA 603, 25 CMR 107.

The decision of the board of review as to the sentence is reversed. The record of trial is returned to the Judge Advocate General of the Navy for resubmission to the board of review. In its discretion, the board of review may reassess the accused's punishment in light of the error or direct a rehearing on the sentence.

Judges FERGUSON and KILDAY concur.