IN THE CASE OF


UNITED STATES, Appellee

v.


Hanalei M. TERLEP, Staff Sergeant
U.S. Air Force, Appellant


No. 01-0241


Crim. App. No. 33408

United States Court of Appeals for the Armed Forces

Argued October 4, 2001

Decided September 30, 2002

SULLIVAN, S.J., delivered the opinion of the Court, in which
CRAWFORD, C.J., and GIERKE, EFFRON, and BAKER, JJ., joined.

Counsel

For Appellant:   Captain Kyle R. Jacobson (argued); Colonel James R. Wise
and Lieutenant Colonel Timothy W. Murphy (on brief); Lieutenant Colonel
Beverly B. Knott.




For Appellee:   Captain Christa S. Cothrel (argued); Colonel Anthony P.
Dattilo and Major Lance B. Sigmon (on brief); Captain James C. Fraser.




Military Judge:  Kurt D. Schuman


THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.

Senior Judge SULLIVAN delivered the opinion of the Court.

During August of 1998, appellant was tried by a general court-martial composed of a military judge sitting alone at Hickam Air Force Base in Hawaii.  In accordance with a pretrial agreement, he pleaded guilty to wrongfully using and distributing marijuana, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 USC § 912a.  Moreover, although charged with burglary and rape, appellant also pleaded guilty to the lesser offenses of unlawful entry of a dwelling and assault consummated by a battery, in violation of Articles 134 and 128, UCMJ, 10 USC §§ 934 and 928.  He was found guilty of all the offenses to which he pleaded guilty, and on August 28, 1998, he was sentenced to a bad-conduct discharge, two years' confinement, and reduction to Airman Basic.  The convening authority approved this sentence on October 19, 1998. The Court of Criminal Appeals affirmed on November 13, 2000.

On May 14, 2001, this Court granted three issues for review:

I

> WHETHER IT WAS PLAIN ERROR FOR THE
> MILITARY JUDGE TO ALLOW, IN THE PRE-
> SENTENCING PROCEEDINGS, TESTIMONY BY THE
> ASSAULT VICTIM THAT SHE WAS RAPED AND
> ARGUMENT BY TRIAL COUNSEL THAT WHEN THE
> ASSAULT VICTIM TESTIFIED, SHE TOLD THE
> "TRUTH."

United States v. Terlep, 01-0241/AF

II

WHETHER IT WAS INEFFECTIVE ASSISTANCE OF
COUNSEL TO FAIL TO OBJECT TO THE ASSAULT
VICTIM'S TESTIMONY, IN THE PRE-SENTENCING
PROCEEDINGS, THAT SHE WAS RAPED, IN LIGHT
OF THE STIPULATION OF FACT TO AN ASSAULT,
NOT A RAPE, AND TO FAIL TO OBJECT TO
TRIAL COUNSEL'S SENTENCING ARGUMENT.

III

WHETHER THE AIR FORCE COURT OF CRIMINAL
APPEALS ERRED BY USING THE CONFINEMENT
CAP IN APPELLANT'S PRETRIAL AGREEMENT AS
A CONCESSION THAT HIS SENTENCE IS
APPROPRIATE AND AS A FACTOR IN FINDING
THAT APPELLANT SUFFERED NO PREJUDICE AS A
RESULT OF HIS COUNSEL'S DEFICIENT
PERFORMANCE.

We hold that neither the victim's sentencing testimony nor trial

counsel's sentencing argument constituted plain error under RCM

811(e), Manual for Courts-Martial, United States (1998 ed.).[1]

See United States v. Corpus, 882 F.2d 546, 551 (1st Cir. 1989);

cf. United States v. Gerlach, 16 USCMA 383, 385, 37 CMR 3, 5

(1966). We further hold that appellant was not denied effective

assistance of counsel when defense counsel failed to object on

the basis of RCM 811(e) to this government evidence and

argument. See United States v. McConnell, 55 MJ 479 (2001).

Finally, we hold that in view of our resolution of the first two

granted issues, the third granted issue in this case is moot.

---

[1] The current versions of all Manual provisions cited are identical to the
ones in effect at the time of appellant's court-martial, unless otherwise
indicated.

Appellant was charged with the rape of S and burglary of her uncle's home with the intent to commit rape, in violation of Articles 120 and 129, UCMJ, 10 USC §§ 920 and 929.  He pleaded guilty to assaulting S with his hands and unlawful entry of her uncle's home, in accordance with a pretrial agreement and stipulation of fact.

The stipulation of fact stated in pertinent part:

> On Friday, 29 August 1997, in the evening, [S] joined the accused and others for a "going-away" party for the accused.  The accused and [S] and several of his friends and cousins, Wade Terlep, Christopher Leming, Robert Hanzon and Derek Distajo, shortly thereafter went onto Hickam Air Force Base to the party planned for the accused.  The party was held in the dormitory room of SrA Steve Reyes as well as in the dormitory recreation room.

> The party activities consisted largely of drinking alcohol and playing pool.  Eventually, several party-goers, including the accused, [S], Wade Terlep, Christopher Leming, Robert Hanzon and Derek Distajo went to a local nightclub called Dancers.  Sometime after midnight, these five individuals then left Dancers and returned to [S]'s uncle's house to drop her off.  At this point, [S] was intoxicated.  Several of the young men present assisted her into the house and onto her bed.  Each of these young men then left the house.  At this point, only [S], her young son, and her uncle were in the house and all of them were in their beds.  Eventually, Christopher Leming went back into the house to spend time

4

with [S].  He stayed with [S] for a period of time and eventually left the house to return to the accused's house where the accused and Wade Terlep, Robert Hanzon and Derek Distajo had settled in for the night.  Shortly thereafter, the accused left his house and went to [S]'s [uncle's] house.  By this time, [S] had closed her door, turned out her lights, and gone to sleep in her bed with her son sleeping in his bed in the same room.  The accused let himself into [S]'s [uncle's] house without her permission.  He then entered [S]'s bedroom and touched her body with his hands without her permission.  After [S] told the accused to stop touching her, the accused then immediately stopped touching her and left her [uncle's] house.  [S] followed him outside and, while crying, asked the accused what it was he thought he was doing.  The accused responded that it was better if he just went home which he then did.

\* \* \*

When the accused assaulted [S] at or near the island of Oahu, Hawaii, on or about 30 August 1997, as described above, he did bodily harm to her by offensively touching her body through a culpably negligent application of force.  The touching was without legal justification or excuse and without her lawful consent.  The accused's acts were negligent and accompanied by a reckless disregard for the foreseeable results to [S].

When the accused entered the dwelling house of Stanley N[] on the island of Oahu, Hawaii, on or about 30 August 1997, such entry was unlawful.  Under the circumstances of this entry, the conduct of the accused was to the prejudice of good order and discipline in the armed forces and was of a nature to bring discredit upon the armed forces.

The military judge found appellant guilty of the above offenses as pleaded to by appellant. During sentencing, the Government called the victim to the stand to testify as follows:

Q: Did you fall asleep fairly quickly after you laid down?

A: Pretty quick.

Q: Can you tell the judge what you remember next happening to you?

A: Well, I was sleeping and well, I thought that I was having a dream that, you know, a sex dream. Then I was awoken because I guess my body felt as though it wasn't just like I was dreaming this, that something was really happening to me. When I woke up, I saw Hanalei's face, and I told him to get, you know, the "f" off of me. Then, you know, he did. Then after that, he--I was getting loud and he said to be quiet before I wake up my son.

Q: When you--you say you woke up and saw his face. Was he on top of you at that time?

A: He was on top of me.

Q: Were you wearing any clothing at that time?

A: No, I was not.

Q: Now, when you fell asleep, did you have any clothing on?

A: No, I did not.

Q: So, you had fallen asleep without any clothes?

A:  That's correct.

Q:  And when he was on top of you, was he wearing any clothing?

A:  Maybe some articles, like a shirt and that's about it.

Q:  Were his pants down or up?

A:  They were [down].

Q:  Was he--how was it that he was touching your body?

A:  All I know is that when I told him to get off of me, he had to take his private part out of me and get off, and that's all.  I don't know.  When I was sleeping, I have no--I don't know what he did to me.  I have no recollection, because I was sleeping.  I was--I didn't think anybody was coming over or anything, so I don't know.  I just woke up when I noticed, you know, my--somebody was on top of me.

Q:  You told him--you screamed at him and told him to get off of you?

A:  Yes, I told him get the fuck off.

Q:  And again, what did he do?

A:  He got off when I told him, and he started putting on his clothes, whatever, you know, pull up his pants, get his stuff.  Then he started going out of my room down the hallway.  I grabbed my shirt, put it on and followed him out to make sure that he was leaving the house.  Then I was out on the street and I was really upset.  I was shocked and disorient[ed].  I told him "Do you know what you just did?  Do you know that I've just been through, you know, something

7

> horrible?  What if, you know, you got me
> pregnant?  What are you doing here?"
> Then he was like in a rush to go, and he
> says that he thinks he better go, and he
> left.

(R. 57-58) (emphasis added).

She then testified about a later confrontation with appellant sometime after this incident:

> Q:  What happened then?
>
> A:  Then he came into the house and I was
> really upset.  I was pretty much yelling
> at him, screaming, and I wanted him to
> admit what he had done--what he had done
> to me.
>
> Q:  What did he say?
>
> A:  He kept looking at the ground.  He
> didn't really say anything.  Like he had
> a look on his face like just empty.
>
> Q:  Did you do anything then?
>
> A:  I told him that I was so upset.  I
> said, "You know what?  I'm not going to
> hit you with the broom."  Then I picked
> up part of my vacuum.  I said, "This is,
> you know, I'm going to hit you with
> this."  Then he just walked on over to
> the middle of the living room and stood
> there while I, you know, kept hitting him
> with the part of the vacuum.  He didn't
> move or nothing, he just took it.  He
> admitted--he said what he had done.  He
> said, "I raped you."

(R. 61-62) (emphasis added).

Trial counsel did not expressly ask for a greater sentence in this case based on the victim's purported rape by appellant. He did note her experiences at the hospital with a "rape protocol kit"; of standing naked while other people probed her body; and her feelings of being "violated" and "contaminated" on the night in question. (R. 116-117)  In his closing rebuttal argument, he further asserted that the victim "has weathered the storm of this whole incident with dignity and with a courageous spirit to get up there and tell you what happened that night, to tell you the truth." (R. 127) (emphasis added).

___ ___ ___

The first two granted issues focus on the victim's sentencing testimony that on the night in question, she was also raped by appellant, an offense for which he was neither tried nor convicted.  They also address trial counsel's assertion in his sentencing argument that the victim spoke the truth in her sentencing testimony.  Appellant recognizes that his defense counsel did not object to this government evidence or argument. He contends, however, that the admission of this testimony and allowance of this argument was plain error under RCM 811(e) (Issue I), and his counsel's failure to object on this legal basis constituted ineffective assistance of counsel.  (Issue II)

United States v. Terlep, 01-0241/AF

In order for plain error to be found, appellant must establish, inter alia, that an error occurred. See United States v. Barner, 56 MJ 131, 138 n.5 (2001) (holding a complete plain error analysis is not required if there was no error). Here, appellant particularly argues that the victim's testimony concerning her purported rape by appellant was inadmissible under RCM 811(e). Relying on the opinion of the appellate court below, he argues that aggravation evidence which goes "well beyond" the facts stipulated to by the parties is "inconsistent with the stipulation of fact" and, therefore, inadmissible. The appellate court below cited United States v. Faircloth, 45 MJ 172, 174 (1996), RCM 910(e), Manual, supra, and Article 45(a), UCMJ, 10 USC § 845(a), as a basis for its construction of this rule.

R.C.M. 811(e) is the Rule for Courts-Martial that covers stipulations of fact. It states:

> (e) Effect of stipulation. Unless properly withdrawn or ordered stricken from the record, a stipulation of fact that has been accepted is binding on the court-martial and may not be contradicted by the parties thereto. The contends [sic] of a stipulation of expected testimony or of a document's contents may be attacked, contradicted, or explained in the same way as if the witness had actually so testified or the document had been actually admitted. The fact that the parties so stipulated does not admit

> the truth of the indicated testimony or
> document's contents, nor does it add
> anything to the evidentiary nature of the
> testimony or document.  The Military
> Rules of Evidence apply to the contents
> of stipulations.

(Emphasis added.)

This Manual rule precludes the Government from evidencing facts at a court-martial which "contradict" those agreed to in an accepted stipulation of fact.  See also para. 154b, Manual for Courts-Martial, United States, 1969 (Rev. ed.); United States v. Gerlach, 16 USCMA at 385, 37 CMR at 5.  However, this rule says nothing about precluding the parties from presenting evidence which "goes beyond" the facts in the stipulation.  Generally speaking, stipulations of fact do not prohibit proof of facts which are neither designated nor necessarily implied in the stipulation.  See 83 C.J.S. Stipulations §§ 87 and 88 (2000).  Accordingly, error did not occur in appellant's case if the testimony of the victim did not contradict expressly or implicitly the stipulation of fact.

For several reasons, we conclude that the victim's testimony did not so contradict the stipulation of fact in this case.  See United States v. Corpus, 882 F.2d at 551.  First, we note that this stipulation of fact did not expressly state that a rape did not occur that night.  Cf. United States v. Gerlach, supra.

Second, the stipulation of fact did not expressly provide that appellant's assault with his hands on the victim's "legs," "torso," and "breasts" were the only touchings that occurred that night. Id. Third, it was not necessarily inferable from the sexual assaults stipulated to that a rape did not also occur. Cf. Harrison v. United States, 20 MJ 55, 60 (CMA 1985) (Everett, C.J., concurring in the result). Finally, defense counsel, without caveat, indicated his understanding that the stipulation of fact was limited in nature and the parties had additional evidence as to the events of that evening. (He said to the military judge in his closing argument on sentencing: "I think you can tell from the structure of the plea agreement that the facts were highly contested in this case, and both sides, in recognizing that fact, came to the agreement that we came to." (R. 118)) See United States v. Cambridge, 3 USCMA 377, 384, 12 CMR 133, 140 (1953) (scope of stipulation to be measured by intent of parties to it). In these circumstances, we find that the victim's sentencing testimony did not contradict the stipulation of fact in violation of RCM 811(e).

An additional question we must address is whether trial counsel's sentencing argument constituted plain error. Appellant, again relying on R.C.M. 811(e), particularly contends that trial counsel was barred from arguing that the victim's

purported rape occurred as a matter of fact.  See United States
v. Gerlach, supra.  As noted above, we conclude that RCM 811(e)
did not prohibit trial counsel from presenting evidence as to
aggravating facts not expressly or implicitly covered by this
stipulation.  Accordingly, argument as to the occurrence of a
rape not particularly addressed in the stipulation was also not
prohibited by R.C.M. 811(e).  Cf. United States v. Gerlach,
supra.

     Of course, we do not hold that it is proper for a trial
counsel to express his personal opinion or belief that a
government witness is telling the truth.  See R.C.M. 919,
Discussion, Manual (1998 ed.), supra.  Such a statement, even as
part of an otherwise appropriate argument, would be improper.
See United States v. Cox, 45 MJ 153, 156 (1996); United States
v. Fuentes, 18 MJ 41, 52 (CMA 1984); see also TJAG Policy Number
26, Attachment One, Air Force Rules of Professional Conduct,
Rule 3.4(e) (4 Feb. 1998), based on ABA Model Rule of
Professional Conduct 3.4(e).  In the instant case, however, we
conclude that appellant has not carried his burden of
demonstrating that assistant trial counsel personally vouched
for the victim's credibility in general or with respect to her
allegation of rape.  See United States v. Fuentes, supra.  In
our view, his argument could reasonably be construed as simply
calling the court's attention to the victim's fortitude in

performing her civic duty as a witness in this personally difficult case. Accordingly, we see no obvious error on this basis in this case.

A final question we will address is whether defense counsel's failure to object to this evidence and argument under RCM 811(e) constituted ineffective assistance of counsel. See generally Strickland v. Washington, 466 U.S. 668 (1984). As a general matter, we have repeatedly said that ineffective assistance of counsel requires, inter alia, that "the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel´ guaranteed the defendant by the Sixth Amendment." United States v. Dewrell, 55 MJ 131, 133 (2001). We see no such errors in this case.

The failure to pursue a legal claim is not necessarily deficient conduct by counsel. If that claim is not shown to have a reasonable probability of being found meritorious as a matter of law and fact, the failure to pursue it is not error and certainly not ineffective assistance of counsel. See United States v. McConnell, 55 MJ 479, 481 (2001). As noted above, R.C.M. 811(e), Manual, supra, does not preclude the evidencing of facts which are not expressly or by necessary implication covered by the stipulation of fact. Moreover, we have concluded

14

that the victim's sentencing testimony did not contradict the stipulation of fact in this case. Accordingly, the failure to make an RCM 811(e) objection in this case was not deficient attorney conduct.

Appellant has not further argued that his counsel were ineffective for failing to secure an agreement limiting the Government's right to introduce aggravation evidence. Moreover, we see no obvious attorney error in failing to secure an agreement between the parties not to evidence additional facts on sentencing. A limited or strict construction of the plea agreement and stipulation in this case makes sense for both parties. For the Government, it avoided a contested trial. For the defense, a conviction for assault consummated by a battery was a far better tactical outcome than a conviction for rape, even if the Government retained its right to introduce evidence that a rape may have occurred on the night in question. See para. 54e(2), Part IV, Manual, supra (bad-conduct discharge, six months' confinement, and total forfeitures is maximum punishment for assault consummated by battery); cf. para. 45e(1), Part IV, Manual, supra (death or such other punishment as a court-martial may direct is maximum punishment for rape); see also United States v. McConnell, supra at 484-85. Accordingly, no deficient

counsel conduct occurred in failing to object on the basis of RCM 811(e).[2]

In closing, a military judge, in some cases, is required by law to determine the sentence at a court-martial. See Article 51(d), UCMJ, 10 USC § 851(d). He or she must do so in accordance with the limits and procedures set by the President. See Articles 54 and 36, UCMJ, 10 USC §§ 854 and 856. The Manual for Courts-Martial provides that the judge must determine an "appropriate sentence," and RCM 1001(b)(4) permits evidence of aggravating circumstances to be considered towards this end.[3] See R.C.M. 1001(a)(1), Manual, supra. Such rules provide for accuracy in the sentencing process by permitting the judge to fully appreciate the true plight of the victim in each case. See United States v. Loya, 49 MJ 104, 108 (1998) (holding evidence admissible on sentencing which provides a full or complete picture of tragic event); United States v. Wilson, 47 MJ 152, 155-56 (1997); United States v. Irwin, 42 MJ 479, 482-83 (1995); see also United States v. Mullens, 29 MJ 398, 400 (CMA 1990).

We do not decide the facts of this case. However, the

---

2 Since we find no deficient attorney conduct by defense counsel in this case, we need not address the additional prejudice question raised in Granted Issue III.

entrance of the Government and appellant into a plea bargain for a lesser charge than rape does not change the facts as to what happened to the victim that night in her view. Furthermore, the search for truth in the courtroom need not be dispensed with simply because a plea agreement exists outside it. The plea agreement here did not expressly bar the victim in this case from giving her complete version of the truth, as she saw it, to the factfinder at the sentencing hearing. Absent an express provision in the pretrial agreement or some applicable rule of evidence or procedure barring such evidence, this important victim impact evidence was properly admitted. See United States v. Wilson, 47 MJ at 155-56.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

---

3 RCM 1001(b)(4) was amended after appellant's court-martial on October 6, 1999, by Executive Order Number 13140, effective November 1, 1999.