*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
WOODARD, FULTON, and HITESMAN,
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Adam J. RAVENSCRAFT**
Interior Communications Electrician First Class
(E-6), United States Navy
Appellant

**No. 201600018**

Decided: 25 July 2019.

Appeal from the United States Navy-Marine Corps Trial Judiciary upon reconsideration. Military Judge: Captain Ann K. Minami, JAGC, USN. Sentence adjudged 6 November 2015 by a special court-martial convened at Naval Base Kitsap, Bremerton, Washington, consisting of a military judge sitting alone. Sentence approved by the convening authority: reduction to pay grade E-3, confinement for one year, and a bad-conduct discharge.[1]

For Appellant: James S. Trieschmann, Jr., Esq.; Commander Chris D. Tucker, JAGC, USN; Captain Daniel R. Douglas, USMC; Captain Thomas R. Fricton, USMC.

---

[1] The appellant pleaded guilty pursuant to a pretrial agreement that had no effect on the sentence adjudged.

For Appellee: Major Cory A. Carver, USMC; Captain Sean M. Monks, USMC; Captain Brian L. Farrell, USMC.

_____

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

_____

PER CURIAM:

The appellant pleaded guilty to one specification of wrongfully disposing of military property of a value greater than $500, and one specification of larceny of military property of a value greater than $500, in violation of Articles 108 and 121, Uniform Code of Military Justice (UCMJ).[2] This case is before us for a second time. We previously found merit in the appellant's allegation that he received ineffective assistance of counsel during the post-trial processing of his case. We set aside the convening authority's action and ordered new post-trial processing.[3] The convening authority has once again approved the findings and sentence in this case. In an opinion issued 17 April 2019, we considered the assignments of error we left unaddressed in our first opinion and a supplemental assignment of error raised by counsel after our first opinion.

On 17 May 2019, the appellant moved the Court to reconsider our 17 April 2019 decision on the ground that it appeared that the Court did not consider all of the previous issues left unaddressed in our first opinion. While the Court did consider in our 17 April 2019 decision all previous issues raised by the appellant, our review of that decision did reveal an ambiguity in that regard. Accordingly, we granted the appellant's motion to reconsider, withdraw our 17 April 2019 decision, and substitute this opinion in its stead.

We have combined and reordered the remaining assignments of error as follows: (1) the appellant's pleas are improvident because the evidence is factually insufficient to establish the value of the military property and because his pleas were not knowingly made; (2) the government violated the

_____

[2] 10 U.S.C. §§ 908 and 921 (2012).

[3] *See United States v. Ravenscraft*, No. 201600018, 2017 CCA LEXIS 419 (N-M. Ct. Crim. App. 27 Jun 2017) (unpub. op.).

appellant's right to due process by failing to disclose evidence favorable to the appellant; (3) the appellant received ineffective assistance of counsel because his counsel did not investigate impeachment evidence relating to a Naval Criminal Investigative Service (NCIS) special agent; and (4) the appellant's sentence is inappropriately severe. The appellant also raises seven alleged errors pursuant to *United States v. Grostefon.*[4] Having considered them, we find they are without merit.[5]

## I. BACKGROUND

In March 2013, the appellant was tasked by his unit to turn in approximately 40 rifle scopes to the Defense Reutilization and Marketing Office (DRMO). When the appellant arrived at DRMO, he was unable to return the scopes because he did not have the required paperwork to complete the process. After being turned away at DRMO, the appellant took the scopes home and put them in his garage. In November 2013, the appellant gave two of these rifle scopes to his nephew.

Later, sometime during October and November 2013, the appellant was assigned by his chain of command on several occasions to obtain supplies for his unit from government authorized vendors. Occasionally the appellant received more equipment from the supply vendors than the appellant's unit had ordered. Instead of returning the surplus items to the vendors, the appellant would keep the items. By doing so, the appellant acquired a variety of military property including binoculars, batteries, gloves, Gerber utility tools, and flashlights. The appellant collected these items in a large trunk which eventually made its way to his home.

The appellant transferred to a new duty station in February 2014 and brought the remaining scopes and the trunk filled with military gear to his new home. In May 2014, NCIS agents contacted the appellant's wife after she accused him of domestic violence and sexual assault. The appellant's wife told NCIS Special Agent P that the appellant possessed military property and she gave the special agent permission to search the home she shared with the appellant and to seize the military property. In her recorded statement to NCIS, the appellant's wife stated that she "could try to take him to trial [for

---

[4] 12 M.J. 431 (C.M.A. 1982).

[5] *See United States v. Clifton,* 35 M.J. 79 (C.M.A. 1992). The errors personally raised by the appellant are: (1) the trial counsel committed misconduct; and (2) the search of his home was conducted in violation of the Fourth Amendment.

the domestic violence and sexual assault] and that's what we're going to do after [the larceny case] is done."[6] The appellant claims that the government failed to disclose this recorded statement as required.[7]

After photographing and taking the military property from the home, Special Agent P took the property in a government vehicle to his own home, locked it in the government vehicle, and left it there for three weeks. After Special Agent P's supervisors became aware of how he had handled the evidence, Special Agent P was disciplined and suspended for two days.[8]

The appellant unsuccessfully moved to suppress the evidence collected by Special Agent P on the grounds that the search and seizure was unreasonable and violated the Fourth Amendment. After the military judge denied the defense motion, the government agreed to try the appellant by a special court-martial instead of a general court-martial in exchange for the appellant's pleas of guilty.[9] During the providence inquiry, the appellant admitted that each rifle scope cost more than $700 and that the other stolen items had a cumulative value of at least $1,500.

Additional facts necessary to resolve the assignments of error are recited below.

## II. DISCUSSION

### A. Providence of the Appellant's Pleas

The appellant claims his pleas were not provident for two reasons. First, he claims the evidence does not show that the value of the stolen and wrongfully disposed of items exceeded $500. Second, he argues his pleas were not

---

[6] J.M. video Statement of 13 Jul 2015 (App. 6 to Appellant's Motion to Attach of 16 Mar 2016).

[7] The record contains contradictory evidence on this point. We have determined, however, that the resolution of this factual question is ultimately immaterial to our resolution of the case.

[8] The record does not clearly demonstrate the extent to which the trial defense counsel knew that Special Agent P mishandled evidence. While the record shows the trial defense counsel knew that Special Agent P had mishandled evidence at some point in his career, it is unclear whether the trial defense counsel knew the more relevant fact here—that Special Agent P mishandled the evidence in *this* case.

[9] Appellate Exhibit III.

knowingly made. We disagree and find the appellant's guilty pleas were provident.

We review a military judge's decision to accept a guilty plea for an abuse of discretion.[10] We will not reverse that finding and reject the plea unless we find a substantial conflict between the plea and the accused's statements or other evidence of record.[11]

### 1. Value of the property

We have no difficulty finding that the appellant's guilty plea to stealing and wrongfully disposing of military property worth more than $500 was provident. The accused admitted that the property was worth more than $500, and he entered into a stipulation of fact consistent with that admission.[12] The appellant admitted that the value of a single rifle scope was a little more than $700—and the appellant admitted he possessed several of them.[13] Further, he also admitted that the total value of the excess items he received from the supply vendors was approximately $1,500.[14] Nothing in the record tends to contradict these admissions. Accordingly, we find that the military judge did not abuse his discretion by accepting the appellant's pleas of guilty to larceny and wrongfully disposing of military property with a value in excess of $500.

### 2. Knowing plea

The appellant next argues that his pleas were not provident because they were not knowingly made because the government failed: (1) to disclose that Special Agent P had mishandled the evidence in his case; and (2) to disclose or provide him with his wife's recorded statement that indicated her intention to "try to take him to trial" for assault.[15] Even in the absence of a defense request, the government is required to disclose known evidence that reasonably tends to negate or reduce the degree of guilt of the accused or reduce the

---

[10] *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008).

[11] *Id.*

[12] *See* PE 1 at 3.

[13] Record at 34.

[14] *Id.* at 41.

[15] J.M. video Statement of 13 July 2015.

punishment that the accused may receive.[16] However, we do not agree that the government's alleged failure to provide these two matters renders the appellant's plea unknowing.

Although the matters might have been helpful to the appellant in impeaching his wife and Special Agent P, "impeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is *voluntary* ('knowing,' 'intelligent,' and 'sufficient[ly] aware')".[17] An appellant's plea is knowing and voluntary if he understands the nature of the rights he is waiving by his plea of guilty and how that waiver will apply generally under the circumstances.[18] It is not required that an appellant know the "specific detailed consequences" of asserting or waiving his right to a contested court-martial in order to knowingly plead guilty.[19] Here, the military judge informed the appellant of the nature of his guilty plea, the impact of waiving the rights he would be giving up by entering pleas of guilty, and the appellant indicated that he understood the nature and impact of his guilty pleas. We find that, even if the government failed to disclose the two matters the appellant finds exculpatory, the appellant's plea was nevertheless knowing and voluntary, and thus not improvident.

## B. Due Process

The appellant has a due process right (as well as a regulatory right) to the exculpatory evidence, even though the government's alleged failure to disclose such evidence would not have rendered the appellant's plea improvident.[20] The appellant claims that the government's failure to disclose this evidence before he entered into the pretrial agreement and pleaded guilty violated his right to due process and that he was prejudiced by that violation. We disagree.

The Supreme Court has determined that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant."[21] Therefore, we find

---

[16] *See* RULE FOR COURTS-MARTIAL (R.C.M.) 701(a)(6), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.); s*ee also Brady v. Maryland*, 373 U.S. 83 (1963).

[17] *United States v. Ruiz*, 536 U.S. 622, 629 (2002) (emphasis in original).

[18] *Id.*

[19] *Id.*

[20] R.C.M. 701(a)(6); *Brady v. Maryland*, 373 U.S. 83.

[21] *United States v. Ruiz*, 536 U.S. at 633.

that the appellant's due process rights were not violated by any failure by the government to provide the appellant with this impeachment evidence when he entered into a pretrial agreement with the convening authority.

However, courts-martial are governed by a more generous discovery scheme than due process and *Brady* require.[22] The Rules for Courts-Martial provide for two categories of required government disclosure: (1) information the trial counsel must disclose without a request from the defense; and (2) information the trial counsel must disclose in response to an appropriate defense request.[23] If the appellant can demonstrate that the government failed to disclose discoverable evidence, we grant relief only if there is a reasonable probability that there would have been a different result at trial if the evidence had been disclosed.[24]

In an affidavit submitted in connection with this appeal, the appellant states that he "would not have pled guilty to larceny and misappropriation of government property until [the matter of Special Agent P's mishandling of the evidence] was properly litigated before the court or until [my detailed defense counsel] explained to me significance [sic] of the government misconduct in relation to my guilty plea."[25] Having considered the appellant's affidavit, we do not find that there is a reasonable probability that there would have been a different result at trial if the evidence had been disclosed.

If this case had gone to trial on its merits, the appellant could have cross-examined Special Agent P about his poor evidence handling. However, the government property seized from the appellant's home would nevertheless still have been admissible. Certainly the appellant could have impeached Special Agent P about the manner in which he handled the evidence, but the special agent and the appellant's wife would have been able to testify that the items in question were the same items the special agent seized from the appellant's home. Additionally, Special Agent P took pictures of the evidence before he mishandled it—pictures that would have corroborated that the items in question were the same items that were seized while in the appellant's possession. Rifle scopes and tools are not the type of property that would degrade or become damaged by Special Agent P's shoddy evidence

---

[22] *United States v. Trigueros*, 69 M.J. 604, 610 (Army Ct. Crim. App. 2010).

[23] R.C.M. 701(a)(1), (a)(3), (a)(4), (a)(6), with R.C.M 701(a)(2), (a)(5)).

[24] *United States v. Santos*, 59 M.J. 317, 321 (C.A.A.F. 2004).

[25] Appellant's affidavit of 3 Mar 2017 at 2.

collection practices. Special Agent P's missteps would not result in the evidence being erroneously attributed to the appellant. We find no reasonable probability that the appellant would have been acquitted had he or his counsel known about Special Agent P's mishandling of the evidence.

We are not convinced that the appellant would have achieved a better outcome had he known that his wife wanted him to be charged with sexual assault. In an affidavit, the appellant's trial defense counsel stated that he "would have advised [the appellant] more explicitly that his plea of guilt [*sic*] would place him in a difficult position in a subsequent trial for domestic violence and sexual assault—specifically that it would inhibit his ability to testify on his own behalf or to offer good military character evidence."[26] We do not doubt the truth of this assertion. But it speaks to the possibility of prejudice to the appellant in a different trial. And, at the time the appellant entered into the pretrial agreement and entered his pleas of guilty, he already knew of the general nature of his wife's domestic violence and sexual assault allegations against him. The recording of his wife's statement does not add materially to our understanding of the appellant's wife's bias against him. We find no reasonable probability that there would have been a different result at trial had this evidence been disclosed.

## C. Ineffective Assistance of Counsel

We review claims of ineffective assistance of counsel *de novo.*[27] The Sixth Amendment entitles criminal defendants to representation that does not fall "below an objective standard of reasonableness" in light of "prevailing professional norms."[28]

Under the Supreme Court's test for ineffective assistance of counsel announced in *Strickland v. Washington*, an appellant must demonstrate both that his counsel's performance was deficient, and that this deficiency resulted in prejudice.[29] The burden on each prong rests with the appellant challenging his counsel's performance.[30] The first prong requires the appellant to show that counsel's performance fell below an objective standard of reasonableness,

---

[26] Trial defense counsel's affidavit of 27 Dec 2016 at 2.

[27] *United States v. Harpole*, 77 M.J. 231, 236 (C.A.A.F. 2018).

[28] 466 U.S. 668, 688 (1984).

[29] *Id.* at 687.

[30] *United States v. Davis*, 60 M.J. 469, 473 (C.A.A.F. 2005).

indicating that counsel was not functioning as counsel within the meaning of the Sixth Amendment.[31] Our review of counsel's performance is highly deferential and is buttressed by a strong presumption that counsel provided adequate representation.[32]

The second prong requires a showing of prejudice resulting from counsel's deficient performance.[33] In resolving claims of ineffectiveness, we "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [appellant]."[34] Rather, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which . . . will often be so, that course should be followed."[35] In the context of a guilty plea, we must determine whether "the outcome of the plea process would have been different with competent advice."[36]

The appellant argues that his trial defense counsel was ineffective because he failed to investigate Special Agent P's mishandling of the evidence in this case. Again, we need not determine whether the trial defense counsel's performance was deficient because we are confident that there was no prejudice to the appellant because the outcome of the plea process would have been the same. While professionally embarrassing to Special Agent P and NCIS, the errors in evidence handling in this case, as noted above, do not cast the competence of the physical evidence into serious doubt. A reasonable trial defense counsel would have advised the appellant to plead guilty even with a complete understanding of the evidence handling in this case.

### D. Sentence Appropriateness

Under Article 66(c), UCMJ, we conduct *de novo* review of sentences within our purview, only approving that part of a sentence which we find should be approved.[37] "Sentence appropriateness involves the judicial function of

---

[31] *United States v. Terlep*, 57 M.J. 344, 349 (C.A.A.F. 2002).

[32] *United States v. Garcia*, 59 M.J. 447, 450 (C.A.A.F. 2004).

[33] *Strickland*, 466 U.S. at 687.

[34] *Id.* 466 U.S. at 697.

[35] *Id.*

[36] *Lafler v. Cooper*, 566 U.S. 156, 163 (2012).

[37] *United States v. Baier*, 60 M.J. 382, 383-84 (C.A.A.F. 2005).

assuring that justice is done and that the accused gets the punishment he deserves."[38]

The appellant contends that a sentence extending to a bad-conduct discharge is inappropriately severe. We disagree. The appellant's offenses occurred over a span of many months and involved a large amount of valuable government property. We have considered the appellant's case in extenuation and mitigation, including his length of service, as well as all other evidence in the record. Having done so, we conclude that a bad-conduct discharge is an appropriate punishment for the appellant and his offenses.

## III. CONCLUSION

After carefully considering the appellant's assigned errors, the record of trial, and the parties' submissions, we conclude the findings and sentence are correct in law and fact and find no error materially prejudicial the appellant's substantial rights. Arts. 59 and 66, UCMJ. Accordingly, the findings and sentence as approved by the convening authority are **AFFIRMED**.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

---

[38] *United States v. Healy,* 26 M.J. 394, 395 (C.M.A. 1988).