*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
GASTON, STEWART, and COGLEY
Appellate Military Judges

―――――――――――――――

**In Re A.J.W.**
*Petitioner*

―――――――――――――――

**UNITED STATES**
*Respondent*

―――――――――――――――

**Tyrell T. GREEN**
Lance Corporal (E-3), U.S. Marine Corps
*Real Party in Interest*

―――――――――――――――

**No. 202000084**

Decided: 12 January 2021

Review of Petition Pursuant to Article 6b,
Uniform Code of Military Justice,
for Extraordinary Relief in the Nature of a Writ of Mandamus

Military Judge:
Andrea C. Goode

Sentence adjudged 4 March 2020 by a special court-martial convened at Marine Corps Base Camp Pendleton, California, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1 and confinement for 140 days.

For Petitioner:
*Major Maryann N. McGuire, USMCR*
*Captain William L. Hinson, USMC*
*Captain Robert B. Echols, USMC*

For Respondent:
*Lieutenant Kevin G. Edwards, II, JAGC, USN*
*Major Clayton L. Wiggins, USMC*

For Real Party in Interest:
*Major Mary C. Finnen, USMC*

Judge COGLEY delivered the opinion of the Court, in which Senior
Judge GASTON and Judge STEWART joined.

————————————

**PUBLISHED OPINION OF THE COURT**

————————————

COGLEY, Judge:

At a special court-martial, the Real Party in Interest [RPI] was convicted, in accordance with his pleas, of two specifications of violating a lawful order, one specification of violating a lawful general order, and one specification of extramarital sexual conduct, in violation of Articles 90, 92, and 134, Uniform Code of Military Justice [UCMJ].[1] One of the specifications of violating a lawful order concerned the RPI's violation of a military protective order [MPO] prohibiting him from contacting or being near Petitioner. The extramarital sexual conduct charge related to sexual intercourse between the RPI and Petitioner while the RPI was married to another person. In exchange for the RPI's guilty pleas, pursuant to a plea agreement, two specifications charging the RPI with sexually assaulting Petitioner in violation of Article 120, UCMJ, were withdrawn and dismissed.

At the presentencing hearing, Petitioner's victims' legal counsel [VLC] offered a written victim impact statement from Petitioner pursuant to Rule for Courts-Martial [R.C.M.] 1001(c). The RPI's trial defense counsel objected that parts of the statement were not relevant because they referenced an

---

[1] 10 U.S.C. §§ 890, 892, 934.

alleged sexual assault which was not one of the charges of which the RPI was found guilty. Both the trial counsel and the VLC argued that because the facts underlying the extramarital sexual conduct and one of the violations of the MPO related to the RPI's alleged sexual assault against Petitioner, she should be considered a victim of all three offenses and her entire statement should be heard.

The military judge sustained the trial defense counsel's objection, in part, and struck several paragraphs from the victim impact statement discussing the alleged sexual assault, reasoning that the RPI neither pleaded guilty to nor was found guilty of sexual assault and that Petitioner was not a victim of the extramarital sexual conduct charge. The VLC objected and sought a stay to file a petition for an extraordinary writ with this Court. The military judge denied the stay, proceeded with the sentencing hearing, and sentenced the RPI for the offenses to which he had pleaded guilty. Petitioner subsequently filed a Petition for Extraordinary Relief with this Court, seeking a writ of mandamus for a new sentencing hearing at which the entire victim impact statement would be heard.

Upon review, we find that the military judge's analysis was based on a correct understanding of the law and that her ruling was within the range of permissible choices and not an abuse of discretion. We therefore conclude Petitioner fails to satisfy the second prong of the analysis required for a writ of mandamus to issue—i.e., showing that her right to the writ is clear and indisputable. As a result, we deny the Petition.

## I. BACKGROUND

The underlying facts leading to the charges in this case are not fully developed on the record, likely due to the plea agreement. The RPI stipulated to facts pertaining to his guilty pleas. Among other things, the stipulation of fact states that sexual intercourse occurred between the RPI and Petitioner on 6 July 2019 in the barracks after a party while the RPI was intoxicated. The stipulation of fact does not address whether Petitioner consented, and the RPI was neither asked nor stated during the providency inquiry whether the sexual intercourse was consensual. Additionally, the stipulation of fact states that on 8 October 2019 the RPI violated an MPO directing him to stay at least 500 feet away from Petitioner. Thus, the MPO violation occurred three months after the sexual intercourse between the RPI and Petitioner.

The plea agreement contains a provision labelled, "Agreements by the accused," under which a subparagraph explains that pursuant to *United States v. Terlep*, 57 M.J. 344 (C.A.A.F. 2002), the RPI agreed that if there was a

named victim for the charges to which he pleaded guilty, the victim could testify during the Government's sentencing case. The provision states:

> [RPI] reserves [his] right to object to any testimony of the named victim that is not relevant or calls for hearsay. In the event that any named victim elects not to testify in person during the government's sentencing case, [RPI] specifically agrees not to object to the named victim's submission of a Victim Impact Statement. This provision does not interfere with his ability to present an effective and complete case in extenuation and mitigation. [RPI does] not waive [his] right to cross-examine or to rebut any crime victim statements under R.C.M. 1001(c) in accordance with R.C.M. 1001(c)(4) and 1001(c)(5).[2]

In accordance with R.C.M. 1001(c)(5)(B), the VLC delivered Petitioner's written victim impact statement to the trial counsel and trial defense counsel the day before the presentencing hearing. It was then offered by the VLC after the announcement of findings, as contemplated under R.C.M. 1001(c)(5)(B), and marked as an appellate exhibit; it was not offered by the trial counsel as evidence in aggravation.

The Defense objected to the references to a sexual assault contained in the victim impact statement, arguing that information about a sexual assault was not relevant to any of the charges the RPI pleaded guilty to and was thus irrelevant—in other words, it fell outside the scope of R.C.M. 1001(c). The Defense did not object to the portions of the victim impact statement addressing the RPI's violation of the MPO concerning Petitioner. The trial counsel and VLC responded that Petitioner should be considered a "crime victim" under R.C.M. 1001(c)(2)(A) of the Article 134 extramarital sexual conduct charge to which the RPI pleaded guilty. The VLC asked the military judge to consider that the alleged sexual assault directly related to the MPO violation, and, for the same reason, the victim impact statement should be considered within the scope of R.C.M. 1001(c).

The VLC also argued that if Petitioner was not allowed to discuss the alleged sexual assault, the victim impact statement would lack context, citing *United States v. Terlep*,[3] as support for allowing a victim to make reference to a sexual assault during sentencing in a case where the accused pleads guilty to another crime. In *Terlep*, the accused pleaded guilty to assault consum-

---

[2] App. Ex. I at 6-7.

[3] 57 M.J. 344 (C.A.A.F. 2002).

mated by a battery as a lesser-included offense of sexual assault, pursuant to a negotiated pretrial agreement. The court in *Terlep* reasoned that "the entrance of the Government and appellant into a plea bargain for a lesser charge than rape does not change the facts as to what happened to the victim that night in her view."[4] The VLC also cited *United States v. Hayes,*[5] decided by this Court, as support for the view that a plea agreement does not bar victims from testifying to their version of the truth, and that although *Hayes* involved a guilty plea to indecent acts with another as a lesser-included offense of forcible sodomy, we did not rely on that as a significant factor in defining who the victim was.[6]

The military judge ruled that she would not consider any reference to the alleged sexual assault. She agreed that the portions of the victim impact statement relating to the MPO were "fair evidence under [R.C.M.] 1001(c)."[7] She noted, however, that the alleged sexual assault took place three months before the MPO violation; thus, she found the violation of the MPO did not relate directly to the alleged sexual assault. She further reasoned that while the sexual activity between the RPI and Petitioner did relate to the extramarital sexual conduct charge, Petitioner was not a victim of that charge. She found that the RPI's spouse could be considered a victim of the extramarital sexual conduct charge, but that extramarital sexual conduct implies consent on the part of the parties involved and that, therefore, a participant in the extramarital sexual conduct could not be considered a "crime victim" for purposes of R.C.M. 1001(c)(2)(A). The military judge distinguished *Terlep,* reasoning that neither extramarital sexual conduct nor the MPO violation were lesser-included offenses of sexual assault. As a result, she ruled that the "relevant portions of the statement relating to the harm [Petitioner] suffered with respect to the violation of Article 90 is relevant, but the items . . . talking about the sexual assault are not relevant to the charged conduct."[8]

The military judge then struck four paragraphs from the victim impact statement and parts of another paragraph that related to the sexual assault. She did consider other portions of the victim impact statement, including a

---

[4] *Id.* at 350.

[5] No. 200600910, 2008 CCA LEXIS 505 (N-M. Ct. Crim. App. Dec. 11, 2008) (unpublished).

[6] *Id.* at *9-10.

[7] R. at 90-91.

[8] R. at 103.

description of how the RPI turned the Petitioner's "world upside down" when she "saw [him] in the common area with one of his friends."[9] She considered the part of the victim impact statement describing the "fear, the confusion, [and] the distress [Petitioner] felt from the [RPI's] violation of the Military Protective Order."[10] She also considered Petitioner's description of her struggle to recover mentally from the RPI's actions and the doubts she faced about continuing her career in the Marine Corps.

## II. DISCUSSION

Petitioner asserts that the military judge erred by refusing to admit the complete victim impact statement under R.C.M. 1001(c). She seeks relief in form of a writ of mandamus to reopen the sentencing proceedings and allow the victim to be fully heard as required under R.C.M. 1001(c).

This Court has jurisdiction over the Petition under Article 6b, UCMJ, under which a victim may petition this Court when the victim "believes . . . a court-martial ruling violates the rights of the victim afforded by . . . [Article 6b, UCMJ]."[11] One of the rights a victim has under Article 6b is the right to be reasonably heard at a sentencing hearing related to the offense. This Court is empowered to issue writs of mandamus as necessary to enforce such statutory and procedural rights of victims pursuant to Article 6b(e), UCMJ.

"A writ of mandamus is a drastic instrument which should be invoked only in truly extraordinary situations."[12] "Only exceptional circumstances amounting to a clear abuse of discretion or usurpation of judicial power justify invocation of the writ."[13] "To prevail, a petitioner seeking an extraordinary writ must show that: (1) there is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and indisputable; and (3) the issuance of the writ is appropriate under the circumstances."[14]

Here, Petitioner fails to satisfy the second prong of the test, in that she has not shown that her right to issuance of the writ is clear and indisputable.

---

[9] App. Ex. V.

[10] *Id.*

[11] UCMJ arts. 6b(e)(1), (4)(A), 10 U.S.C. § 806b(e)(1), (4)(A).

[12] *J.M. v. Payton-O'Brien*, 76 M.J. 782, 785 (N-M. Ct. Crim. App. 2017).

[13] *Id.*

[14] *Id.* (citing *Hasan v. Gross*, 71 M.J. 416, 418 (C.A.A.F. 2012)) (internal quotation marks omitted).

In analyzing this issue, we must use the standard for reviewing a military judge's decision to admit evidence or statements of victim impact, which is abuse of discretion.[15] "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous."[16] Based on the record before us, we find the military judge did not abuse her discretion in placing reasonable limitations on the content of the victim impact statement.

## A. The Scope of Victim Impact Statements

Finding the right balance between a victim's right to be reasonably heard and an accused's right to be sentenced only for those charges of which he or she has been found guilty has resulted in a number of cases analyzing this situation from a variety of perspectives.[17] As the rules themselves make clear, however, the right stems from the particular offense of which the accused has been found guilty. Thus, a victim of an offense under the UCMJ has the right to be "reasonably heard" at a sentencing hearing "relating to *that offense*."[18] In order to have such a right as a "crime victim," the victim must have suffered "direct physical, emotional, or pecuniary harm *as a result of the commission of an offense of which the accused was found guilty*."[19] If so, the victim may submit a statement of "victim impact," which includes "any financial, social, psychological, or medical impact on the crime victim *directly relating to or arising from the offense of which the accused has been found guilty*."[20]

---

[15] *United States v. Hamilton*, 78 M.J. 335, 340 (C.A.A.F. 2019).

[16] *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010) (citation and internal quotation marks omitted).

[17] *See e.g.*, *Terlep,* 57 M.J. at 344; *United States v. White,* No. ACM 39600, 2020 CCA LEXIS 235 (A.F. Ct. Crim. App. July 15, 2020) (unpublished); *United States v. Da Silva,* No. ACM 39599, 2020 CCA LEXIS 213 (A.F. Ct. Crim. App. June 25, 2020) (unpublished.); *United States v. Dunlap,* No. ACM 39567, 2020 CCA LEXIS 148 (A.F. Ct. Crim. App. May 4, 2020) (unpublished); *United States v. Roblero,* No. ACM 38874, 2017 CCA LEXIS 168 (A.F. Ct. Crim. App. Feb. 17, 2017) (unpublished); *United States v. Daniels*, No. 201600221, 2017 CCA LEXIS 240 (N-M. Ct. Crim. App. Apr. 13, 2017) (unpublished); *United States v. Hayes*, No. 200600910, 2008 CCA LEXIS 505 (N-M. Ct. Crim. App. Dec. 11, 2008) (unpublished).

[18] R.C.M. 1001(c)(1) (emphasis added).

[19] R.C.M. 1001(c)(2)(A) (emphasis added).

[20] R.C.M. 1001(c)(2)(B) (emphasis added).

Petitioner cites cases such as *Terlep* and *Hayes* for the broad proposition that victim impact statements should be unfettered and allow a victim to present a complete account of what happened to the sentencing authority. However, those cases actually support the more narrow proposition that in determining the scope of proper victim impact, the victim is not necessarily bound by the facts the accused admitted to during providency or in the stipulation of fact. Neither *Terlep* nor *Hayes* supports that victim impact statements must be admitted where a purported victim describes impact that falls outside the scope of "victim impact" as defined under R.C.M. 1001(c)(2)(B).

Three cases recently decided by the Air Force Court of Criminal Appeals all recognize that a victim's right to be reasonably heard is limited in scope by R.C.M. 1001(c)(2)(B). First, as the court held in *United States v. Hamilton*, a victim's right to be reasonably heard is not indefeasible, and the "content of a victim impact statement must comport with the defined parameters of victim impact or mitigation as defined by the statute and R.C.M. 1001A."[21] Nor, as the court found in *United States v. Roblero*, is Article 6b a blanket authorization for a victim to state to the sentencing authority whatever he or she might desire: "The right to be reasonably heard does not transform the sentencing hearing into an open forum to express statements that are not otherwise permissible under R.C.M. 1001."[22] Rather, as the court held in *United States v. Da Silva*, the military judge must make an individualized decision about each victim who seeks to exercise the right to be reasonably heard and the words through which he or she seeks to do so.[23]

*Da Silva* involved a recruiter who made unwanted sexual advances to two recruiting assistants. At trial both gave unsworn victim impact statements, orally and in writing. Although the charges involved orders violations, both were found to be "crime victims" with the meaning of R.C.M. 1001(c)(2)(A). However, one of the two, whom the accused had been accused of kissing, said that "her body was violated" and made a reference that the appellant "did it without [her] consent."[24] While the court recognized that these words were a description of how she felt, the words were actually a description of how she

---

[21] *United States v. Hamilton*, 77 M.J. 579, 585-586 (A.F. Ct. Crim. App. 2017), *aff'd*, 78 M.J. 335 (C.A.A.F. 2019). R.C.M. 1001A is the predecessor to R.C.M. 1001(c).

[22] *Roblero*, 2017 CCA LEXIS 168, at *18.

[23] *Da Silva,* 2020 CCA LEXIS 213, at *50.

[24] *Id.* at *52.

felt about an offense for which the accused was acquitted.[25] The court found that if a military judge were going to allow a victim to comment in a way that could be reasonably interpreted as a comment about an offense for which an accused was acquitted, members should be instructed that they cannot do so.[26] To that end, the court found that a tailored instruction may be required, as opposed to the standard unsworn statement instruction.

We find our sister court's reasoning in these cases persuasive in addressing the issues before us. First, we agree that the military judge must make an individualized decision about each person who seeks to exercise the right to be reasonably heard under Article 6b, to ensure he or she is a "crime victim" under R.C.M. 1001(c)(2)(A) as a result of an offense of which the accused has been found guilty. Second, the scope of the "victim impact" sought to be introduced is limited by how that term is defined under R.C.M. 1001(c)(2)(B), which is restricted to impact "directly relating to or arising from the offense of which the accused has been found guilty." Third, if the victim impact statement can be interpreted more broadly than the rules allow, the military judge must take action to either limit the statement, as the military judge did in this case, or clearly instruct the members (or state on the record in a judge-alone trial) how the statement will be interpreted, in order to ensure both compliance with the rules and that the accused is only sentenced for the offenses of which he was found guilty.[27]

Based on the record before us, we find that the military judge in this case properly analyzed whether Petitioner's victim impact statement directly related to or arose from an offense of which the RPI was found guilty. Petitioner takes issue with the military judge's use of the term, "relevance," in her ruling regarding the portions of the victim impact statement she was willing to consider, implying an improper analysis by the military judge. As the Court of Appeals for the Armed Forces tells us in *United States v. Hamilton*, victim impact statements are not evidence—i.e., they are not admitted by the prosecution—but are introduced by the victim or the VLC on behalf of the victim, as was the case here.[28] As a result, the question is not whether the information contained in the victim impact statement is "relevant," or even whether a Mil. R. Evid. 403 balancing test is required, because those re-

---

[25] *Id.*

[26] *Id.* at *53-54.

[27] *Cf. United States v. Erickson*, 65 M.J. 221, 224 (C.A.A.F. 2007) (applying the *Fletcher* factors to ensure the accused was sentenced based on the "evidence alone").

[28] 78 M.J. 335 (C.A.A.F. 2019).

quirements relate to evidence. Rather, the proper question, according to *Hamilton,* is whether the statement is within the proper "scope" of R.C.M. 1001A, or its successor, R.C.M. 1001(c).

Here, we find that the military judge properly analyzed whether the victim impact statement was within the scope of R.C.M. 1001(c) and did not treat the victim impact statement as though it were actually evidence. The military judge placed the introduction of the victim impact statement between the Government's case in aggravation and the Defense case in extenuation and mitigation, as contemplated under R.C.M. 1001(c), and also had the victim impact statement properly marked as an appellate exhibit[29] rather than as a prosecution exhibit. The military judge's analysis also focused correctly on whether Petitioner was a victim under R.C.M. 1001(c)(2)(A) of the offense the RPI was convicted of, which we discuss further below, and whether the statement was within the scope of "victim impact" under R.C.M. 1001(c)(2)(B). Thus, while practitioners in the field should use the correct terminology,[30] we find that the military judge nevertheless conducted the proper analysis under the correct law.

## B. Extramarital Sexual Conduct

We further find that the military judge did not abuse her discretion by determining that the impact as described by Petitioner in the problematic portions of her victim impact statement was a result of an alleged sexual assault, as opposed to directly relating to or arising from the offense of which Appellant was found guilty: extramarital sexual conduct.

As an initial matter, however, we disagree with the military judge's suggestion that it is impossible for a participant in extramarital sexual conduct to be a victim of that offense since the nature of the offense implies that the parties to the underlying sexual conduct do so with consent.[31] We find the proposition that extramarital sexual contact is or must always be consensual

---

[29] It would also have been appropriate to mark it as a court exhibit.

[30] We note that the language in the plea agreement concerning the victim impact statement also reflects a lack of clarity in its use of "relevance" versus "scope," which may have contributed to the confusion of terms on this issue.

[31] The military judge stated, "Government the fact that you made the decision to capture what, at least the victim believes was a sexual assault as a consensual act arguably precludes her rights under 1001(c) with respect to that offense." R. at 92-93. She later stated, "Adultery—I guess, arguably the wife could be the victim, but a consensual participant is not a victim of that crime." R. at 98.

is unsupported by the law. First, consent is not an element of extramarital sexual conduct, the elements of which are as follows:

> (1) That the accused wrongfully engaged in [any of various forms of sexual intercourse] with a certain person;
>
> (2) That, at the time, the accused knew that the accused or the other person was married to someone else; and
>
> (3) That, under the circumstances, the conduct of the accused was either: (i) to the prejudice of good order and discipline in the armed forces; (ii) was of a nature to bring discredit upon the armed forces; or [both].[32]

Second, as the Court of Military Appeals observed in *United States v. Hickson*,[33] "despite the various references to adultery as 'voluntary' it does not appear that rape and adultery are so inconsistent that a man charged with adultery is entitled to acquittal if he produces evidence that intercourse took place without the consent of the woman."[34] The court in *Hickson* was struggling with the question of whether a person could be charged with both rape and adultery (the predecessor of the current offense of extramarital sexual conduct) despite a number of sources defining adultery as a voluntary act.[35] Citing a number of state court cases on adultery finding that the willingness aspect of adultery relates to the accused, or that the third party's willingness to participate is immaterial, the court ultimately concluded that rape and adultery are not mutually exclusive of each other.[36]

Moreover, the element of prejudice to good order and discipline supports that the offense of extramarital sexual conduct can cause the sort of harm envisioned by R.C.M. 1001(c)(2)(A). Among the factors the *Manual for Courts-Martial* [*MCM*] outlines for assessing this element is "[t]he *impact*, if any, of the extramarital conduct on the ability of the accused, *the co-actor*, or the spouse of either to perform their duties in support of the armed forces."[37]

---

[32] *Manual for Courts-Martial* (2019 ed.) [*MCM*], pt. IV, ¶ 99.b.

[33] 22 M.J. 146 (C.M.A. 1986).

[34] *Id.* at 151.

[35] *Id.* at 150 (citing *Black's Law Dictionary* (5th ed. 1979)).

[36] *Id.*; *accord United States v. Hill*, 1997 CAAF LEXIS 1093 (C.A.A.F. Sep. 30, 1997) (holding that under the UCMJ adultery is not a lesser-included offense of rape and "the two offenses are not mutually exclusive").

[37] *MCM*, pt. IV, ¶ 99.d.

Thus, a proper analysis under R.C.M. 1001(c) requires more than just determining the type of offense the accused was found guilty of, but further ascertaining whether that offense is the source of the harm discussed by the victim.

Our sister court's discussion in *United States v. Dunlap*[38] is instructive on this issue. In that case, the wife of the accused gave a victim impact statement as a victim of adultery. The Air Force Court of Criminal Appeals analyzed both whether the wife was a proper "crime victim" and whether any of her statement was outside the scope of "victim impact." The court concluded that although extramarital sexual conduct is more of an offense against marriage or against military good order and discipline,[39] a non-offending spouse could be considered a "crime victim" depending on a fact-specific analysis of whether the spouse identifies impact that directly relates to or arises from that offense of which the accused was found guilty. In *Dunlap*, the non-offending spouse described emotional impact that the accused's sexual conduct had, including the shock and frustration at knowing her husband of more than ten years was having an intimate relationship with one of his enlisted co-workers, along with the toll that knowledge took on her mental well-being. The Air Force Court of Criminal Appeals found that that emotional impact was directly related to and proximately caused by the adultery committed by the accused.[40] But the court found that some of the other impact identified by the non-offending spouse was outside the scope of "victim impact" because it did not relate to or arise from the adultery offense of which the accused was found guilty—e.g., his indifference to the non-offending spouse's being pregnant with their fifth child and his lack of interest in naming his fifth child.[41]

Similarly, while it could be possible for the third party participant to be a victim of extramarital sexual conduct, that offense and the harm sought to be avoided, or punished, is different from that of sexual assault. Thus, as the court underscored in *Dunlap*, and we believe the rule requires, the analysis must go further and ascertain whether the impact *as described by the victim* was related to or arose from the offense of which the accused was found guilty. That is what the military judge did in this case.

---

[38] No. ACM 39567, 2020 CCA LEXIS 148 (A.F. Ct. Crim. App. May 4, 2020) (unpublished).

[39] *Id.* at *17-18.

[40] *Id.* at *19.

[41] *Id.* at *25.

In her victim impact statement, Petitioner articulated consequences resulting from the act of sexual intercourse underlying the extramarital sexual conduct charge, but she repeatedly referred to the impact as harm she suffered from the RPI's "sexual assault" against her.[42] The military judge conducted the required fact-specific inquiry of the language used in the statement and concluded that the impact was discussed as stemming from the offense of sexual assault, as opposed to the offense extramarital sexual conduct of which the RPI was found guilty. She therefore excised portions of the statement on that basis, as inconsistent with R.C.M. 1001(c). We find reasonable her conclusions in this regard.

## III. CONCLUSION

After careful consideration of the record and the briefs of VLC and the Government,[43] we determine that the military judge did not abuse her discretion in limiting the victim impact statement only to those impacts directly relating to or arising from the charges of which the RPI was found guilty. We therefore conclude that a writ of mandamus cannot issue because Petitioner has not shown her right to the writ to be clear and indisputable. Accordingly, the relief sought by Petitioner is **DENIED.**

Senior Judge GASTON and Judge STEWART concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

---

[42] App. Ex. V at 1.

[43] The RPI, while represented and entitled to do so, declined to file a brief before this Court.